# LEHMAN *v.* DISTRICT OF COLUMBIA.

CRIMINAL LAW; INFORMATIONS IN THE POLICE COURT; INTOXICATING LIQUORS, SALE OF; SUNDAY LAWS; PRACTICE; TRIAL; CHARGE TO JURY.

1. It is not necessary that an information in the police court charging the defendant with selling intoxicating liquors on Sunday and failing to keep his barroom closed on that day, in violation of the act of Congress of March 3, 1893, should allege that the defendant did not come within the scope of the proviso of that act allowing hotel-keepers to sell liquors to *bona fide* registered guests on Sunday.
2. Where one of two counts of an information is sufficient, it is too late after verdict for the defendant to object to the sufficiency of the other.
3. An information charging the defendant with keeping his barroom open on Sunday in violation of the act of Congress of March 3, 1893, regulating the sale of intoxicating liquors in this District, is

sufficient without charging that it was kept open for the sale of intoxicating liquors, the opening of a barroom on Sunday, whether any sale is in fact made, being within the prohibition of the act, the presumption being that any opening of the barroom in such manner that the public might have access to it is for purposes of sale, until it is made to appear that the opening was only to the extent that it was necessary for the use and occupancy of the remainder of the property; *distinguishing* Hannan v. District of Columbia, 12 App. D. C. 265.

4. Where, during a trial in the police court of a defendant charged with selling liquor on Sunday and keeping his barroom open on that day, the trial court, interrupting the trial, receives the verdict of a jury in another and similar case and comments severely upon the action of the jury in that case in bringing in a verdict of acquittal, such circumstance is not good ground for exception by the defendant in the case on trial; *distinguishing* Ruppert v. Wolf, 4 App. D. C. 556.

5. Where the keeper of a barroom in a hotel is charged with selling liquor on Sunday, and the evidence sustains the charge, the burden of proof is on him to show that the liquor was sold to *bona fide* registered guests of the hotel.

6. Every sentence or every paragraph of a trial court's charge to the jury is not required to state the entire law applicable to the subject under consideration, but it is sufficient if each statement taken in connection with the context is an accurate statement of the law of the case.

7. Where, in a prosecution in the police court for selling liquor on Sunday, the question is raised as to what is a *bona fide* registered guest to whom liquor can be lawfully sold on Sunday, it is not error for the trial court to charge the jury that there must have been actual *bona fides* or good faith in the transaction under inquiry.

8. Under the act of Congress of March 3, 1893, prohibiting the sale of intoxicating liquors in this District on Sunday and requiring barrooms to be closed on that day, an employer can be held liable in a prosecution for illegal sales made by his servant without his consent or authority.

No. 1094. Submitted October 2, 1901. Decided January 7, 1902.

IN error to the Police Court of the District of Columbia.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Lorenzo A. Bailey* for the appellant:

1. The defendant's motion, after all the evidence was in, that the jury be instructed to return a verdict of not guilty, should have been granted, because there was absolutely not a vestige of proof of any sales to support the first count or of proof that the barroom was not closed to support the second count. The evidence as to the four soldiers does not show what they did with the contents of the bottles they received from the doorway, or that the bottles came from within the doorway or from the barroom, or that the bottles contained beer. The witnesses for the prosecution testified that they saw something drank which they believed to be beer because it looked like beer and was in bottles that looked like beer bottles, but they had no positive knowledge that it was beer. There was no attempt to show what kind of beer the witnesses referred to — whether harmless root beer or sassafras beer or the more substantial and formidable lager beer.

2. The information, for want of the averments that the defendant was not a hotel-keeper, etc., wholly fails to charge any offense over which the police court has jurisdiction. It is impossible to read properly the clause creating the offense of selling liquor on Sunday (29 S. L. 563) without reading the exception in favor of hotel-keepers. By such omission a different and more comprehensive offense is created. *The State* v. *Nutwell,* 1 Gill, 54; *Kiefer* v. *State,* 87 Md. 562; *Franklin* v. *State,* 12 Md. 236, 244, 249; *Mills* v. *Kennedy,* 1 Bailey (S. Car.), 17; *Matthews* v. *State,* 2 Yerger, 233; *State* v. *Craft,* 1 Walker (Miss.), 409; *United States* v. *Winslow,* 3 Sawyer, 337; *State* v. *Jarvis,* 67 Minn. 10; *State* v. *Ravenscroft,* 62 Mo. App. 109; 1 Wharton Crim. Law, Sec. 378 and cases cited; 1 Bishop Crim. Proc., Secs. 636 to 641, inclusive; Bishop Stat. Cr., Sec. 1044 and cases cited.

3. The language of the judge addressed to the jurors in the Brooks case, in tones manifesting strong feeling and condemnation, and the implied threat and statement that he would take some action in reference to them, because they had returned a verdict of not guilty in a case like the case

at bar, and the action of the judge in requiring them to take seats in the courtroom like a lot of school boys kept in for punishment, were well calculated to inspire the jury in the case at bar, before whom all this occurred, with fear of like treatment and to dissipate any chance of a fair and an impartial trial. *Price* v. *Carter,* 39 Fla. 362; *United Firemen's Ins. Co.* v. *Thomas,* 53 U. S. App. 517; 82 Fed. Rep. 406; 27 C. C. A. 42; Thompson on Trials, Sec. 218. Such error as this cannot be cured by a subsequent withdrawal of the language or by a caution to the jury to ignore it. *Davison* v. *Herring,* 48 N. Y. Supp. 760; *Swan* v. *Keogh,* 54 N. Y. Supp. 474; *Ruppert* v. *Wolf,* 4 App. D. C. 556, 563; *Starr* v. *United States,* 153 U. S. 614; *Hicks* v. *United States,* 150 U. S. 442. The following are cases in which judgments have been reversed for language used by trial judges tending to prejudice the unsuccessful parties, viz.: *Howland* v. *Oakland,* 115 Cal. 487; *Flinn* v. *Ferry,* 127 Cal. 648; *State* v. *Tickel,* 13 Nev. 502, 508; *Roberson* v. *The State,* 40 Fla. 509; *Peeples* v. *The State,* 103 Ga. 629; *Hubbard* v. *The State,* 108 Ga. 786; *People* v. *Hill,* 56 N. Y. Supp. 282; *Williams* v. *West Bay City,* 119 Mich. 395; *Schmidt* v. *St. Louis R. Co.,* 149 Mo. 269, 283; *Dunn* v. *The People,* 172 Ill. 582, 591, 596; *Marcom* v. *Adams,* 122 N. C. 222; *Feinberg* v. *The People,* 174 Ill. 609, 617.

4. The mere failure to keep the barroom closed on Sunday is not, in itself, an offense. The statute requires that on Sundays the barroom " shall be kept closed and no intoxicating liquor sold." The true intent is to prohibit the opening of the barroom for the purpose of selling and not to make it an offense to open the room for a lawful purpose. *Hannan* v. *District of Columbia,* 12 App. D. C. 265. The tendency to give a literal interpretation of the Sunday liquor law in favor of private right is general. Such is the tendency in this jurisdiction. Bishop Stat. Crimes, Sec. 1070; *District* v. *Reuter,* 15 App. D. C. 237; *Hannan* v. *District,* 12 App. D. C. 265; *Mackall* v. *District,* 16 App. D. C. 301, 306.

5. The defendant is not liable for a sale made by his barkeeper, without the defendant's knowledge or consent, and

in his absence and contrary to his instructions.  *Rosenbaum v. State,* 57 N. E. (Ind.) 156.  When the sale is by an agent, it is necessary to prove that it was in the presence of the principal or with his knowledge and assent, or by his direction or authority.  Black on Intox. Liq., Sec. 510.  The evidence is uncontradicted that the defendant had prohibited and in good faith did his utmost to prevent sales to persons other than *bona fide* registered guests in their rooms or at their meals; and if sales were made to others, such sales were without defendant's knowledge or consent and against his express orders.  The charge of the court in this particular was very prejudicial, misleading and erroneous.  *United States* v. *Ash,* 75 Fed. Rep. 651; *Freedman* v. *The State,* 37 Tex. Crim. Rep. 115; *Wadsworth* v. *The State,* 37 Tex. Crim. Rep. 584; 2 Am. & Eng. Encyc. 714; 4 Am. & Eng. Encyc. 703.  See also a long list of cases in 9 Gen. Dig. Annotated, p. 2635, Sec. 84, holding an employer not criminally liable for illegal sales by his agent without his consent or authority.

*Mr. Andrew B. Duvall* and *Mr. E. H. Thomas* for the appellee.

*Mr. Justice* Morris delivered the opinion of the Court:

Information was filed in the police court of the District of Columbia against the plaintiff in error on March 6, 1901, for alleged violation of the act of Congress of March 3, 1893, regulating the sale of intoxicating liquors in the District.  The first count charged him with the sale of intoxicating liquors on Sunday; and the second count, with keeping his barroom open on the same day.  On trial before a jury, verdict was rendered against him on both counts; and he then filed motions for a new trial and in arrest of judgment.  Both motions were overruled, and sentence was pronounced against him; and thereupon he brought his case to this court upon writ of error allowed to him in pursuance of exceptions reserved at the trial.

There are twelve assignments of error; but the questions involved are reduced by the counsel for the plaintiff in error to four. These are: (1) That of the sufficiency of the information; (2) That of the correctness of the rulings of the court as given to the jury; (3) Whether, in view of certain extraneous proceedings which occurred at the time of the trial, the accused had a fair and impartial trial; (4) Whether the failure to keep a barroom closed on Sunday is, under the statute, a separate and distinct offense from that of the sale of liquor on that day. And this fourth question is to some extent involved also in the first.

1. The information charged in the first count that the accused, being " the keeper of a licensed barroom or place where intoxicating liquors are sold, under the provisions of the act of Congress entitled 'An act to regulate the sale of intoxicating liquors in the District of Columbia,' approved March 3, 1893, on the third day of March, in the year 1901, on Seventh street northwest, in the city of Washington, District of Columbia aforesaid, did then and there keep and have said place for the sale of and did sell intoxicating liquors on said day, the said day being Sunday;" and in the second count, that the accused, " on said third day of March, in the year aforesaid, did fail to have his barroom or place of business for the sale of intoxicating liquors closed on said day, the said day being Sunday," all in violation of the act of Congress aforesaid. Under the motion in arrest of judgment, it was argued that this information is fatally defective, inasmuch as it fails to show affirmatively " that the defendant was not the keeper of a hotel or tavern having a license under the act of Congress mentioned in the information, and that the sales charged were not sales made to *bona fide* registered guests in the said hotel or tavern at the meals or in the rooms of such guests;" in other words, that the information fails to state, by express allegation to that effect, that the defendant did not come within the exception provided in the statute itself.

The sixth section of the statute it is which prohibits the sale of intoxicating liquors on Sunday and the keeping open

of barrooms on that day, as well as during certain specified hours of the night; and the same section contains three several provisos, in which there is provision for three several exceptions to the rule. The first of these is to the effect " that the keeper of any hotel or tavern having a license under this act may sell intoxicating liquors to *bona fide* registered guests in his hotel or tavern at the meals or in the rooms of such guests "— meaning that such keeper of a hotel or tavern may so sell on Sunday or during the other prohibited times. The argument is that it was necessary for the prosecution to allege in express terms, and consequently also to prove, that the defendant was not the keeper of a hotel or tavern, having a license so to sell.

This argument does not appear to be well founded. The general rule on this subject, as deduced from numerous authorities on the point, is well stated by the Encyclopedia of Pleading and Practice, vol. 11, p. 533, title, *Intoxicating Liquors,* in these words:

"An exception contained in the enacting clause of the statute, or made a part thereof by reference, should be negatived in the indictment (or information); it is otherwise, however, where the exception is not a part of the enacting clause by incorporation or reference, but is contained in a subsequent clause, proviso, section or statute."

But this statement, and the cases cited in support of it, leave it somewhat indefinite as to when a proviso superadded to an enacting clause is to be regarded as incorporated therein. In the case, however, of *Nelson* v. *United States,* 30 Fed. Rep. 112, the true distinction seems to be sufficiently indicated. There it was said:

"As a rule, an exception in a statute by which certain particulars are withdrawn from or excepted out of the enacting clause thereof, defining a crime concerning a class or species, constitutes no part of the definition of such crime, whether placed close to or remote from such enacting clause. And whenever a person accused of the commission of such a crime claims to be within such exception, it is more logical and convenient that he should aver and prove the fact than

that the prosecution should anticipate such defense and deny it."

It is therefore necessary and proper to negative apparent exception and immunity in so far only as such exception or immunity enters into the description of the alleged offense; but it is not necessary to anticipate excuse by alleging that there is no ground for such excuse. We might well illustrate the proposition if we supposed a statute wherein the prohibition was upon the sale of all intoxicating liquors, except wine. Evidently an information or indictment to the effect that the accused person sold intoxicating liquors, without negativing the fact that it was wine that was sold, might well be held insufficient, wherever in the statute the exception appeared; for the offense under the statute was not the sale of intoxicating liquors, but the sale of such liquors other than wine. The definition of the offense might be held incomplete without the exclusion of the exception by negative averment. But if in the same statute provision was made, as it was made in our act of Congress of March 3, 1893, that certain persons, under certain circumstances, might sell intoxicating liquors without subjecting themselves to the penalties prescribed against all persons in general engaging in the traffic, it is very clear that it is for the accused person to bring himself within the category of persons so entitled to immunity, and to show the existence of the circumstances by virtue of which the immunity arises, and that it is not incumbent on the prosecutor to anticipate the defense.

We are of opinion, therefore, that it was not necessary in the present case that the information should allege that the defendant did not come within the scope of the proviso concerning keepers of hotels and taverns.

2. In this connection, also, it is claimed on behalf of the plaintiff in error, that no offense under the statute is charged in the second count of the information, which alleged merely that the defendant failed to have his barroom or place of business for the sale of intoxicating liquors closed on Sunday. It is said that the true intent of the statute was to

prohibit the opening of the barroom for the purpose of selling intoxicating liquors, and not that it might not be kept open for a lawful purpose.

It might be sufficient to say, as to this criticism, whether it be well or ill founded, that it cannot apply to the first count of the information, which charges that the defendant kept the place open for the sale of intoxicating liquors and did actually sell such liquors on Sunday. And there being one good count in the information, it is too late after verdict to object to the sufficiency of the other. *Claassen* v. *United States,* 142 U. S. 140.

But even apart from this we do not regard the contention as well founded. It is very true that in the case of *Hannan* v. *District of Columbia,* 12 App. D. C. 265, that court held that the mere opening of a barroom for the purpose of having ingress or egress through it to or from other parts of the house, it being the only way through which such ingress or egress could be had, was not a violation of the statute. But it was said there:

" The bar must be kept closed, and the barroom — that is, the room devoted to the uses of the bar — must be kept closed against all who would resort to such place to obtain liquor on Sunday; and this requirement must be strictly observed and enforced. \* \* \* If, indeed, it had been shown that the door was open, or any other way provided, by which even a single individual could have procured liquor from the bar on Sunday, the statute would have been violated, and the proprietor of the bar would be liable to punishment."

If the mere sale of liquor on Sunday was all that was intended to be prohibited by the statute, it would have been easy to have said so, without any reference to the matter of opening or closing the barroom. But we cannot consider the prohibition against opening the barroom on Sunday as mere surplusage; and plainly it was intended to have some meaning. Assuredly it is not necessary to seek far for the reasons which dictated the propriety of the prohibition, as distinguished from the prohibition against sale. Those

15

reasons are obvious. It might be conceded that the prohibition was intended to prevent the opening of the barroom for the purpose of sale, and not for a lawful purpose. But the presumption is plain that any opening of a barroom, in such manner as that the public may have access to it, whether any one actually resorts to it or not, is for the purpose of sale, until it is made to appear, as was done in the case of *Hannan* v. *District of Columbia,* that the opening was only to the extent that it was necessary for the use and occupation of the remainder of the property. No unreasonable interpretation of the statute is required to find a distinct prohibition in it against the opening of barrooms on Sunday, without reference to the fact of sale, or whether any such sale takes place or not.

We conclude that the information was good, and that the motion in arrest of judgment was properly overruled.

3. Two of the assignments of error and much of the argument on behalf of the plaintiff in error are based upon certain extraneous proceedings which took place during the progress of the trial of this case in the police court, and which by the bill of exceptions are made part of the record herein.

It appears that immediately preceding the trial of this case a case had been tried of *District of Columbia* v. *John H. Brooks,* for a violation of the same act of Congress in keeping his barroom open after 12 o'clock midnight and before 4 o'clock of the morning of the succeeding day; and the jury in that case came into court and returned their verdict while one of the witnesses for the prosecution in the case now before us was on the witness stand giving his testimony. What then happened we may give in the words of the bill of exceptions, as follows:

" Thereupon the jury in the said cause of *The District of Columbia* v. *John H. Brooks* duly declared and returned a verdict of not guilty; whereupon the judge presiding said, ' What is that verdict, not guilty? ' to which the foreman of said jury replied: ' Yes, your honor; that verdict was unanimous; ' and thereupon the judge presiding said, ' That

is the most outrageous verdict I have ever heard. I have heard many odd verdicts, but never one like that. It is directly opposite to the instructions given by the court, and I feel that I should discharge the jury and not allow it to sit in any other case.' And thereupon the judge directed the clerk of the court to furnish him with a list of the names of the jurors returning said verdict, and after giving said direction he further said, ' I shall consider what I shall do about this. I shall take some action.' And thereupon the judge directed the jury returning said verdict to take seats in the courtroom, where they thereafter remained until the jury in the case then on trial retired to consider of their verdict. The language used by the judge above stated in quotation marks was uttered by him in the presence and hearing of the jury in the case then on trial and in tones manifesting strong feeling on his part and condemnation of the action of the jury returning said verdict.

"And thereupon the examination-in-chief of the said witness, Sanders, having been concluded, and before any other or further proceedings in the cause, the attorney for the defendant Lehmann stated to the court that he considered the judge's action in so addressing the jury in said case of *The District of Columbia* v. *John H. Brooks* and the language used by the said judge to the said jury, being the language contained within quotation marks as above set forth, constituted a menace or threat to the jury in the case now under trial and tended to intimidate said last above mentioned jury, and would so operate upon the minds of said jury as to prevent them from returning a verdict absolutely free from fear or bias, all being to the prejudice of the defendant Lehmann. And thereupon the attorney for said defendant Lehmann moved the court, for the reasons stated by him, as aforesaid, to discharge said jury from the further consideration of this case; which said motion the court overruled; to which action of the court in overruling said motion the attorney for the defendant then and there duly excepted, and the said exception was then and there duly noted by the judge on his minutes.

"And thereupon the attorney for the defendant Lehmann further excepted to the action of the court and to the language used by him contained within quotation marks, as hereinbefore set forth, which said exception the judge thereupon duly noted on his minutes, and then and there stated to the jury that they were not in any way to consider what he had said to the other jury."

This is the story of the transaction and of all that was said and done in this regard, as stated in the bill of exceptions. Subsequently in the beginning of his charge to the jury the court referred to the incident, and said:

" I think possibly I had better say at the beginning that what I said to the other jury was not intended for this jury, and I do not want you to take to yourselves anything I said to them. The jury is bound to take the law as laid down by the court. They have no right to consider whether the court has made a mistake or not. If the judge makes a mistake in laying down the law, the defendant can take it up to the Court of Appeals on a writ of error. That is where the other jury made its mistake. It did not go at all by the law as laid down by the court, and in its own way brought in a verdict contrary to the law as given them by the court. I do not expect this jury to do anything of that kind. What I said to the other jury about bringing in the very strange verdict which they did I do not want this jury to consider at all. The law is to be taken as laid down by me, and, as I said before, if I make a mistake that is not for the jury. The jury is to arrive at the facts in the case, and is to bring in its verdict according to the law as given them by the court and the evidence in the case. The court has nothing to do with the facts. It can only call your attention to them. It is for you to determine from the law and the evidence as to what your verdict will be."

No exception is taken to this part of the charge. The complaint of the appellant is that it did not remedy the mischief assumed to have been caused by the previous action of the court, and that this previous action was so fatally

injurious to the appellant's cause that the only remedy for it was in the discharge of the jury.

The care with which it has been sought in our country to protect the freedom of action of juries against injurious remarks by court or counsel, especially in the trial of criminal causes, has been illustrated in numerous cases of comparatively recent occurrence, both in the State and in the Federal tribunals. See *Starr* v. *United States,* 153 U. S. 614; *Hicks* v. *United States,* 150 U. S. 442; *Ruppert* v. *Wolf,* 4 App. D. C. 556; *Feinberg* v. *People,* 174 Ill. 609; *Williams* v. *West Bay City,* 119 Mich. 395; *Schmidt* v. *St. Louis Railroad Co.,* 149 Mo. 269; *Howland* v. *Oakland,* 115 Cal. 487; *Flinn* v. *Ferry,* 127 Cal. 648; *Roberson* v. *The State,* 40 Fla. 509; *Peeples* v. *State,* 103 Ga. 629; *Hubbard* v. *The State,* 108 Ga. 786. And we ourselves have had an illustration of it in the case of *Ruppert* v. *Wolf,* above cited, in which a judgment was reversed and a new trial ordered in a civil cause in consequence of comments upon a witness which were deemed harsh and excessive.

All the cases cited, however, were cases in which the injurious action complained of occurred in the course of the case under consideration and in direct connection therewith. The novel feature is now presented of complaint of the action of the court in another cause — a cause, it is true, of prosecution for a cognate offense under the same statute, but having no connection whatever with the present case other than that it was tried immediately before the present case, and that the present case was interrupted to receive the verdict of the jury in the previous case, during which interruption the action complained of took place.

Now, we have nothing whatever to show whether the action of the court in the Brooks case was justifiable or not. That there may be, and that there often have been cases, in which the verdicts of juries have been so grossly lawless, and so grossly in violation of their official oaths, as to excite the just indignation of the courts to which they were rendered, must be admitted. If, for instance, in the Brooks case the testimony was so overwhelmingly one-sided and in

favor of the prosecution as to justify the court in directing a verdict against the defendant, and the jury should, for some whim or caprice, or possibly even from some corrupt motive, render a verdict in direct antagonism to the instructions of the court and in favor of the defendant, assuredly a court is not to sit tamely in silence, and see its authority defied and the law violated with impunity by recalcitrant jurors charged with the just administration of the law. Since the jury of attaint has become obsolete, punishment as for contempt of court is the only mode left in which juries unmindful of the obligations of their oaths to do justice according to law can be held for the faithless performance of their duty. This, of course, supposes an extreme case; and it need not be presumed that the conduct of the jury in the Brooks case was of this character, especially as that case is not before us and we know nothing whatever of its merits. But it is certainly to be presumed from the record before us that, in the opinion of the court, the jury in the Brooks case had been greatly, perhaps even grossly, delinquent in their disregard of the instructions of the court; and any trial court, whether its instructions are in themselves right or wrong, cannot permit disregard of such instructions to pass with impunity. Setting aside a verdict is not always sufficient in such cases.

Now, we cannot assume, in the absence of all record on the subject, that the action of this trial court in the Brooks case was unwarranted. On the contrary, we must infer, if we draw any inference at all, that it was fully warranted by the circumstances of that case. And if it was fully warranted by the circumstances of that case, how can we assume that it has affected injuriously, in contemplation of law, the case of the present appellant? How can the assertion of the truth and the enforcement of right in one case be held to affect injuriously the administration of justice in another subsequent case? The argument on behalf of the appellant, if carried to its logical conclusion, would require, not only that the jury sworn in the appellant's cause should have been discharged, but that no other causes should be tried

before a jury at that term, or indeed, at any subsequent term — in fact, that the information against the defendant and all other pending informations should be dismissed. For the alleged threat, if held to operate against any one subsequent case, might, with equal reason, be held to operate against all. For the fact that the alleged threat was uttered during an interruption in the cause now before us, is of no consequence. An equally injurious effect could be predicated of it, if it had been uttered immediately before the trial of the present cause had been commenced, but in the presence of those who had been summoned to serve as jurors in it. It is easy to see to what a disastrous consequence the proposition would lead, if it were allowed as well founded in law; and the inevitable deduction is sufficient to show that the premises are untenable.

We must hold that the circumstances, as stated in the record before us, are not good ground for exception by the appellant.

4. Error is assigned upon various portions of the charge given by the court to the jury, and upon the refusal of the court to direct a verdict for the defendant. The motion of the appellant to direct a verdict in his favor was based upon the assumption that there was no testimony to show that on the occasion specified intoxicating liquors had been sold or disposed of by the defendant or his employees. We think that the trial court was right in disposing of this motion as it did. The testimony for the prosecution was, in substance, that the liquor which the witnesses saw to be dispensed was beer, because it looked like beer and was contained in bottles like beer bottles. But if this testimony was at all insufficient, it was amply supplemented by that of the witnesses introduced for the defendant, who testified very positively that beer was being dispensed from the barroom to the persons in the hotel. And it is very clear from the testimony that the persons to whom such beer was being served were not registered guests of the hotel, at least, were not *bona fide* registered guests. If such they were, it was incumbent on the defendant to show the fact, which he might

very readily have done, if he desired to bring himself within the exception of the proviso which allows the sale of intoxicating liquors by keepers of hotels on Sunday to the registered guests of their houses. It would serve no good purpose to analyze the testimony in this regard. It must suffice to say that, in our opinion, there is abundant testimony to go to the jury on this point, and that it would have been plain and palpable error to have taken the case from their consideration upon the appellant's motion.

The charge of the court to the jury is brief, occupying less than a page and a half of the printed record. We have already cited the first portion of it, which has reference to the incident of the jury in the Brooks case. Of the remainder, more than half has been excepted to by the appellant. The first exception is to the following:

"The law says that a hotel-keeper may sell liquor to *bona fide* registered guests at their meals and in their rooms. That is the only exception that is made in favor of a hotel-keeper. That is the only difference between a hotel-keeper's license and an ordinary license for a saloon."

It is objected to this statement of the law that it excluded from the consideration of the jury the fact that the right of the hotel-keeper existed on Sunday. But this objection is wholly untenable in view of the context. It had already been stated that the charge was for selling liquor on Sunday; and it could not well have been misunderstood that the difference referred to by the court was in reference to sales on Sunday. It has been repeatedly decided that every sentence or every paragraph of a charge is not required to state the whole and entire law applicable to the subject under consideration — for that would generally be impracticable or impossible. It is sufficient that each statement, taken in connection with the context, should be an accurate statement of the law of the case. *Northern Pacific R.R. Co.* v. *Babcock,* 154 U. S. 190; *Insurance Co.* v. *Ward,* 140 U. S. 76.

The court then went on to say: "If a man is a *bona fide* registered guest he can get liquor at his meals, or, if he desires, he can have it served in his rooms. The law does

not allow a man to go into a hotel and order a few crackers and some cheese or a sandwich for the purpose of getting a drink, or writing his name in a book for the purpose of having liquor served in his room, but he must be a *bona fide* registered guest. It must be done in good faith."

To this it is objected that there was no evidence to support it, that it was a suggestion to the jury that the defendant had endeavored to evade the law by furnishing fictitious meals to persons who were not *bona fide* registered guests, and that there is no rule of law by which it can be determined, as matter of law, how many crackers or sandwiches shall constitute a meal. But we think that the objection is untenable. It was in evidence that there was a very large number of persons on the premises who were supplied with liquor from the barroom of the defendant, and that some of these also were supplied with sandwiches. The claim of the defendant was that he supplied liquor to none but *bona fide* registered guests. The question, therefore, was distinctly raised as to what constituted a *bona fide* registered guest, to whom intoxicating liquor could be lawfully sold on Sunday; and the trial court did not err in holding that there must be actual *bona fides* or good faith in the transaction.

More reliance seems to be placed by the appellant on his ninth assignment of error, which is founded upon the following language of the court to the jury:

" Something was said by the counsel for the defendant that the defendant did not authorize the sales. This defendant is responsible for the acts of his agents. If his bartender or servant in charge of his business sells or permits liquor to be sold, the proprietor is responsible. He may not have authorized it, and it may have been done during his absence; but he is responsible because they are his agents; and if they sold liquor contrary to law, he would be responsible, and the law makes him responsible."

It is charged that this instruction is erroneous, and that an employer can not be held liable in a criminal suit for illegal sales made by his agent without his consent or author-

ity. But this proposition we regard as untenable in the present case. It is undoubtedly the law that no man can be held criminally liable for the offense of another man, unless he be an accomplice with him or an accessory to the act. The theory of our law is that every man must answer for his own offenses, not for those of others. But the rule is not without exception, at least apparent exception; for the exception is probably more apparent than real. The law on the subject is well stated by Mr. Justice Cooley, speaking for the Supreme Court of Michigan, in the case of *People* v. *Roby,* 52 Mich. 577, where he said:

" As a rule there can be no crime without a criminal intent; but this is by no means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence, and there are many other cases where mere neglect may be highly criminal. Many statutes, which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

Almost the same precise case as that now before us, was the case of *Carroll* v. *The State,* 63 Md. 551, where a duly licensed dealer in spirituous liquors was indicted for unlawfully selling liquor to a minor, and where it was held by the Court of Appeals of Maryland, that the defendant could not escape the penalty of the offense by proving that the sale had been made by his barkeeper during his absence, without his knowledge, and contrary to his instructions given in good faith, and which were so understood by the barkeeper. It was laid down as the law that the intent in such cases is immaterial in determining the guilt. Citing the case of *McCutcheon* v. *The People,* 69 Ill. 601, in the Supreme Court of the State of Illinois, the Court of Appeals of Maryland said:

" It is immaterial whether the sale was made by the appellant or an agent. If made by an agent, the presumption is conclusive that he acted within the scope of his authority.

When the agent, as in this case, is set to do the very thing which, and which only, the principal's business contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restrictions on that business. His gains are increased, and he must bear the consequences. The fact that he has given orders not to sell to minors only shows a *bona fide* intent to obey the law, which all the authorities say is immaterial in determining guilt. The court may regard such fact in graduating punishment, when it has a discretion."

To the same effect are the cases of *McCutcheon* v. *People,* 69 Ill. 601; *Dudley* v. *Sautbine,* 49 Iowa, 650; *Martin* v. *State,* 30 Neb. 507; *State* v. *Denoon,* 31 W. Va. 122; *Commonwealth* v. *Emmons,* 98 Mass. 6; *Barnes* v. *The State,* 19 Conn. 397; *State* v. *Hartfiel,* 24 Wis. 60; *Ulrich* v. *Commonwealth,* 6 Bush (Ky.), 400; *Regina* v. *Bishop,* L. R., 5 Queen's Bench Div. 259; *Redgate* v. *Haynes,* L. R., 1 Queen's Bench Div. 89; 3 Greenleaf on Evidence, Secs. 20 and 21; *Commonwealth* v. *Sellers,* 130 Pa. St. 33; *State* v *Baer,* 37 W. Va. 1; *Ward* v. *State,* 48 Ind. 289; *State* v. *Kittelle,* 110 N. Car. 560; *Boatright* v. *State of Georgia,* 77 Ga. 717. See also *Prather* v. *United States,* 9 App. D. C. 82.

It is very plain that, if the rule were otherwise, the statute might be evaded with impunity and absolutely nullified. Most, if not all, of the cases cited, or that may be cited to the contrary of this, will be found upon examination, to be cases where the question of intent entered into the criminality of the action, and not cases wherein the statute peremptorily prohibited the act, without reference to the element of intent, as our statute does, when it says: " On Sundays every barroom and other place where intoxicating liquors are sold shall be kept closed and no intoxicating liquors sold."

We are of opinion, therefore, that the ninth assignment of error is not well founded.

The tenth and eleventh assignments require no serious consideration from us. They are addressed to the following sentences contained in the charge:

" You are not to take into consideration the fact that it was inauguration time, or the large crowd that was here, or anything of that kind. You are to treat it as you would any ordinary case. I might say a great deal about the results of selling liquors to this crowd."

The instruction, on which the twelfth and last assignment of error is founded, is the following:

" If the liquor was taken out of the barroom and drunk on some other portion of the premises to which the barroom was attached, it would be, in contemplation of law, keeping his barroom open. He cannot keep his barroom closed and in the next room sell liquor. He must keep the premises on which the barroom is located closed for the sale of liquor. If any part of said premises is used for the sale of liquor, this is, in contemplation of law, keeping his barroom open, because his license covers his entire premises."

. And it is objected that this part of the charge amounted to a denial of the defendant's right to enter his barroom for the purpose of obtaining beer to be delivered to his *bona fide* registered guests at their meals or in their rooms as permitted by law, and that it ignored the fact that the defendant was a hotel-keeper, and as such had the right to furnish liquor to his guests on the premises outside of the barroom. Undoubtedly if this part of the charge were to be segregated from all the rest and taken alone, it might be subject to the criticism suggested by the appellant. But, as we have already said in regard to another part of the charge, it is not to be taken alone, but in connection with the context; and so taken, it is very plain that the purpose of the court was to define what constituted the keeping open of the barroom on Sunday so as to provide intoxicating liquors for others than the *bona fide* registered guests of the hotel. It may well have been that there were *bona fide* registered guests of the hotel and others who were not such, and that liquor was indiscriminately furnished to both classes on Sunday. It is the sale of it to the latter class that is prohibited by law; and it is to the circumstances of such sale that

this portion of the court's charge was directed. We do not think that the jury misunderstood the instruction, or could have been misled by it.

It is our conclusion that there was no error in any of the rulings of the court below, and that the judgment rendered against the appellant should be *affirmed, with costs. And it is so ordered.*