## PEEPLES *v.* THE STATE.

1. It is legitimate and proper, when examining witnesses called to prove the good character of one on trial for crime, to inquire of them how long they have known him, for what length of time they have resided in the same community with him, and as to other like matters. Their answers to questions of this nature are relevant as tending to show their opportunities for acquiring a knowledge of the general character of the accused.

2. The charge of the court in so far as it dealt with legal principles was free from material error, but it was in some respects argumentative, and for that reason subject to criticism; some of the remarks made by the judge when ruling upon questions arising during the trial were objectionable; a minor error was committed in permitting the introduction of hearsay testimony, but aside from this, it does not affirmatively appear that any other illegal evidence was admitted.

Argued February 21, — Decided March 23, 1898.

Indictment for receiving stolen goods.   Before Judge Fite. Whitfield superior court.   October term, 1897.

*R. J. & J. McCamy, Jones & Martin* and *J. W. Harris,* **for** plaintiff in error.   *Sam P. Maddox, solicitor-general,* contra.

LUMPKIN, P. J.   The plaintiff in error, T. J. Peeples, who was convicted upon an indictment charging him with having received from Walter Bohannon stolen goods, knowing the same to have been stolen, complains of the overruling of his motion for a new trial.   It contains many grounds.   Some of them relate to questions which can hardly arise at the new trial which we shall grant, and others are not of sufficient importance to require special notice at our hands.

1. The accused relied largely in his defense upon proof of his previous good character, and called to the stand for the purpose of establishing the same quite a number of witnesses. His counsel offered to inquire of them, "how long they had known him, how near they had lived to him, and how intimately acquainted with him they were."   The court refused to permit this to be done.   In our judgment, the court should, within reasonable limits, have allowed an examination of these witnesses upon the line indicated.   It would not, of course, have been competent to prove by them particular acts of the accused tending to show good character, or allow them to state

their personal opinions as to his uprightness and integrity. They could only testify as to their knowledge of his general character, or reputation; but while this is true, we think their answers to questions of the nature above specified would have been relevant as tending to show their opportunities for acquiring a knowledge of that general character.   In 1 Gr. Ev. (15th ed.) § 461, in laying down the rule as to how the character of a person is to be proved, it is said: "The inquiry must be made as to his general reputation, where he is best known." The witnesses "must be able to state what is generally said of the person by those among whom he dwells, or with whom he is chiefly conversant; for it is this only that constitutes his general reputation or character." The following, extracted from the same section, is especially pertinent to our present question: "And, ordinarily, the witness ought himself to come from the neighborhood of the person whose character is in question." Obviously, one who has for a long time resided in the same community with another is more likely to know the general reputation of the latter than those whose acquaintance with him is only casual, and who, by reason of not having associated with his neighbors, have not had the means of knowing the general estimation in which he is held.   The doctrine as laid down by Greenleaf is stated in almost the same terms in 3 Taylor on Ev. (9th ed.) § 1472[3].

2. The charge of the court, in so far as it dealt with legal principles involved in the case, was substantially correct. Portions of it were, however, argumentative; but we apprehend that at the next trial the court's instructions to the jury will not be in this respect subject to criticism.

In ruling upon certain questions arising during the trial, the judge made remarks which were objectionable and calculated to prejudice the case of the accused.   We will call attention to two of these.   The accused having moved for a continuance on the ground of an absent witness, viz., his son Drew Peeples, and having sworn that this witness was not absent with his knowledge or by his procurement or consent, the judge, in the presence of those from whom the jury was to be selected, remarked in this connection: "I will pass this case until a

quarter after one this evening.    Captain Peeples [meaning the accused] can get Drew Peeples here, if he wants him." Again, in ruling upon the question discussed in the first division of this opinion, the judge alluded to the efforts of counsel to introduce the testimony therein referred to as being unnecessary, because they consumed time "in taking wild-goose chases all over the country in these things." There was no occasion for making remarks of this kind, and their effect upon the prisoner's case could not have been otherwise than harmful.

A slight error was committed in permitting the introduction of hearsay testimony; but the record does not disclose that any other illegal evidence was admitted.    We are satisfied, upon a careful review of the whole case, that a new trial should be granted; and it is accordingly so ordered.

*Judgment reversed.    All concurring, except Cobb, J., absent.*