SIMMONS, *alias* JONES, *v.* THE STATE.
NELSON, *alias* LINCOLN, *v.* THE STATE.

Nos. 10712, 10715.  FEBRUARY 21, 1936.

*Edwin J. Feiler,* and *Farr & Mitchell,* for plaintiff in error.

*M. J. Yeomans, attorney-general, W. B. Gibbs, solicitor-general, B. D. Murphy, J. T. Goree,* and *E. J. Clower,* contra.

ATKINSON, Justice.   John Henry Simmons and Thomas Nelson were jointly indicted and tried for the murder of N. K. Perry. The evidence tended to show that about 10 o'clock on the night of September 20, 1934, Perry and a woman were seated in an automobile, when the defendants attacked them for the purpose of robbery, and shot Perry at close range with a shotgun loaded with birdshot, inflicting a wound from which he died at 11 o'clock the next day.   A post-mortem examination disclosed a number of the shot in the heart.   The assailants escaped, and shortly afterwards Simmons was first arrested, and then Nelson.   Both made to the arresting officer statements admitting a conspiracy to rob the occupants of the automobile, consummation of the robbery and shooting Perry in the progress of the robbery.   They also made statements before the jury which included admissions of similar import. There was corroborative testimony.   A verdict was rendered, finding both defendants guilty without any recommendation.   Simmons filed a motion for a new trial solely on the general grounds.   Nelson filed a separate motion for a new trial upon general and special grounds.   Both motions were overruled, and each of the movants excepted.

█   Where two persons conspire to commit the crime of robbery and in furtherance of the common design to rob, both being present and participating in the commission of a robbery, in the course of which one of them shoots and kills the person robbed, such killing is the probable consequence of the unlawful design to rob, and both are guilty of murder.   *Berryhill* v. *State,* 151 *Ga.* 416 (107 S. E. 158) ; *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36) ; *Lumpkin* v. *State,* 176 *Ga.* 446, 449 (168 S. E. 241).   "A conspiracy may be shown by circumstantial evidence, as well as direct testimony. *Turner* v. *State,* 138 *Ga.* 811 (2) (76 S. E. 349) ; *Lynn* v. *State,* 140 *Ga.* 387 (7 *a*), 394 (79 S. E. 29) ; *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357) ; *McElroy* v. *State,* 125 *Ga.* 37 (2), 39 (53 S. E. 759) ; *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488) ; *Young* v. *State,* 151 *Ga.* 401 (107 S. E. 37)."   *Chance* v. *State,* 156 *Ga.* 428

(3 *a*) (119 S. E. 303). The evidence was sufficient to support the verdict against the defendant Simmons, and there was no error in overruling his motion for a new trial.

■ "A prima facie case is all that is necessary to carry dying declarations to the jury. When this has been made out, the declarations are admitted, and the ultimate determination as to whether or not the person making them was in articulo mortis and realized that death was impending is for the jury." *Findley* v. *State*, 125 *Ga.* 579 (54 S. E. 106). That the declarant was in articulo mortis may be shown by the nature of the wound, and the declarant's consciousness of impending death may be established by other evidence. It need not appear from the declaration itself, and may be determined from all of the circumstances. 30 C. J. 263, § 504. The evidence as to the character of the wound, and conduct of the declarant and his sayings, was sufficient to show prima facie that he was in the article of death and conscious of his condition when several hours before death he made certain declarations that were admitted in evidence as set forth in the second special ground of the motion for new trial, and there was no error in overruling the motion to rule them out on the alleged grounds: (a) "There was not sufficient evidence that said alleged dying declaration was made by the deceased while he was cognizant of his dying condition and impending death, and that he was in the article of death at the time of making said declarations." (b) "It was only an opinion of the witness that the deceased was conscious of his dying condition, and such condition not shown to be known to the deceased." (c) "It appears that the deceased was in a state of partial unconsciousness at the time of the alleged dying declaration, and did not know whether the person or persons shooting him were negroes or not." (d) "The testimony of the witness was to the effect that his brother, the deceased, was in a dying condition only during the last hour of his life, and the alleged dying declarations were made before the last hour of the deceased's life."

■ Certain statements by the judge while a witness for the State was under cross-examination were complained of as an improper expression of an opinion on the issues involved. The proper mode of excepting to such statements was by motion for mistrial, and the defendant failed to adopt this procedure. He could not abide the chance of a favorable verdict, and, after the return of an adverse

764

verdict, have that verdict set aside on a motion for new trial. *Tanner* v. *State,* 163 *Ga.* 121 (9) 130 (135 S. E. 917) ; *Herndon* v. *State,* 178 *Ga.* 832 (6), 850 (174 S. E. 597). The same principle applies to alleged improper remarks of the solicitor-general during the progress of the examination of the witness. *Snell* v. *State,* 179 *Ga.* 52 (175 S. E. 14).

■ Sid Hulbert, a witness for the State, testified, that he and Jim Miller took Simmons to the city prison farm (called "Blue Jay"), where Nelson was pointed out by Simmons and arrested by Hulbert and Miller and placed in their automobile where, ten minutes after the arrest, he made a short statement "freely and voluntarily without hope of reward or fear of punishment, and no inducement was offered to him to make it. . . He said he knew we had him and that he was with this man . . [Simmons] . . and . . he was there and . . was the man that done the shooting. . . I guess he said that because he saw Simmons there. Simmons didn't say anything to him. Neither Jim Miller nor I told him what we wanted him for, and we then carried him to the county jail where he made a statement." On cross-examination the witness testified: "He was out in the car about ten minutes before he made the statement. In the meantime I didn't say anything, I told him that was all right, to just wait a while; and I took him to the county jail and got his statement. I did not ask him any questions. . . Jim Miller in my presence asked him some questions. I don't know what he said to him. . . He was talking to him. . . He was talking to him when I went in the Captain's office, and he was talking to him when I got back, but I didn't hear what he said. I don't know but what Miller was threatening to kill him. I don't know. He didn't have a gun pointed at him in my presence. I don't know if it is possible that he said, 'Nigger, I'm going to kill you;' it was out of my presence. The part of the confession I heard at the Blue Jay was obtained without duress. The part of it I heard was obtained freely and voluntarily." At this point the attorney for the defendant moved "to rule out the testimony or statement at Blue Jay, on the ground this witness don't know whether or not it was obtained freely and voluntarily or not." There was no error in refusing to rule out the evidence on the ground stated. The foregoing ruling and those stated in division 3 above sufficiently deal with the questions raised in the

third and fourth special grounds of the motion for a new trial. Those grounds are without merit.

■ It was held in *Wilburn* v. *State*, 141 *Ga*. 510 (81 S. E. 444) : "A confession of guilt is admissible in evidence when voluntarily made, without being induced by another, by the slightest hope of benefit or the remotest fear of injury. Penal Code [1910], § 1032. The mere fact that the accused was in custody, or under arrest at the time the confession was made, did not render it incompetent if in fact it was made voluntarily within the legal meaning of the term. *Hilburn* v. *State*, 121 *Ga*. 344 (49 S. E. 318) ; *Green* v. *State*, 124 *Ga*. 343 (52 S. E. 431). . . It appears from the evidence submitted by the State that the confession objected to was freely and voluntarily made, at least so far as to be admissible in evidence, leaving the jury to finally pass on the question ; and it was not inadmissible because made at night, in the woods, while the accused was handcuffed, and in the presence of a deputy sheriff and a detective, and while being transferred from one jail to another at the instance of his father." Under application of the principle so announced the court did not err in overruling the motions to exclude the evidence as to confessions, as complained of in ground 9 of the motion for new trial, on the contention that "it was obtained in the presence of only police officers, and not any disinterested citizens ;" or "because the circumstances under which it was obtained show it was obtained under conditions under duress and fear of punishment ;" or because "it was not a confession, but was a series of questions and answers."

■ Neither the evidence nor the prisoner's statement before the jury authorized an instruction on the law of voluntary manslaughter, and the omission to charge the jury on that subject was not erroneous.

■ The evidence did not authorize a charge on the law of accident and mistake as embodied in the Code of 1933, § 26-404. If the prisoner's statement authorized a charge on that subject, the omission to charge thereon was not erroneous, in the absence of an appropriate request.

■ In ground 7 of the motion for a new trial complaint is made of the following charge : "Now, gentlemen of the jury, if you find in this case the defendants, or either of them, have admitted the homicide in this case, ordinarily malice would be inferred, because

all killings are presumed by law to be malicious unless otherwise shown; but, however, if in that explanation of the killing the defendant qualifies that statement by stating that he did it in fear of his life from threats or menaces from some one else, the burden would still be on the State to show that the killing was done with malice. Now in this case you look at all the facts and circumstances and see whether or not one or both of these defendants by their own admission killed the deceased, and determine whether or not they were coerced by threats of another that caused them to do that; and if you believe that this coercion or threats were of such a nature as to excite in their or his mind a reasonable fear that his or their life or member was in danger, and the facts and circumstances are such as to cause you to believe that the defendants did these things by reason of threats and menaces that I have heretofore charged you, then I charge you if they did that under that sort of fear, they would not be guilty of anything; this is they, or he if only one was compelled by threats." This charge was not erroneous, as contended, on the grounds "(a)   That the court having fully charged the law of confessions, the language used in the above set out portion of the charge did in effect charge the law of admissions, as well as acting under threats.   (b)   That the charge on confessions and the law of admissions in the same case was error, for the reason that there can not be both a confession and an admission; that it must be either a confession or an admission, and can not be both.   (c) That the said charge was opinionative in character, and expressed the opinion of the court that it had been proved that one of the defendants killed the deceased, and expressed and intimated the opinion of the court of the guilt of the accused by reason of his alleged admission."

■   In ground 8 error is assigned on the following charge: "Now, gentlemen of the jury, these men are being tried jointly. It is your job to determine the guilt or innocence of both of them. You may make up two verdicts, or make up separate verdicts for each of them. You may make separate punishments or different punishments if you determine that this is proper. That is your job. If you believe both defendants, or either of them, guilty of the crime of murder under the law which I have given you, it would be your duty to convict that defendant or both defendants; and in that event the form of your verdict would be, We, the jury, find the defendants

guilty. This would mean that the supreme punishment, which is death; would be the punishment they would receive, unless you go further, which you would have a right to do either with or without reason, and recommend them to the mercy of the court, and the punishment with a recommendation to the mercy of the court each defendant would receive would be punishment in the penitentiary for life; and the form of a verdict of that kind would be, We, the jury, find the defendants guilty and recommend them to the mercy of the court. Now, gentlemen of the jury, as I intended to charge you, you could find one defendant guilty with a recommendation and one without a recommendation, or you could find them both guilty, or you could find them each not guilty; that is entirely your job— whether they should have the same verdict. If you do not believe the defendants guilty, or either of them, or have a reasonable doubt as to the guilt of either of them, give the benefit of the doubt to them, or him that you should have the reasonable doubt about, and find him or them not guilty. In that event the form of your verdict would be, We, the jury find the defendants not guilty." While the charge is somewhat involved, it is not cause for reversal for the reasons, as contended. "(a) That the language used in said charge was argumentative and calculated to confuse and mislead the jury. (b) That the charge in effect set out that it would be the duty of the jury to convict both defendants or to acquit both defendants, and in the language used and the forms of the verdict given did not show the kind of verdict and form of the verdict to be returned if one was found guilty and one found not guilty, or if one was found guilty with a recommendation and one without a recommendation, or if both defendants were found guilty with a recommendation."

The first special ground of the motion for new trial is merely elaborative of the general grounds. The evidence was sufficient to support the verdict finding the defendant Nelson guilty, and there was no error in refusing a new trial.

*Judgments affirmed. All the Justices concur.*