### S98A0720. CAMMON v. THE STATE.
### S98A0721. BOLTON v. THE STATE.
### S98A0722. HALL v. THE STATE.
(500 SE2d 329)

CARLEY, Justice.

The grand jury returned an indictment charging Patrick Cammon, Marcus Bolton and Kevin Hall with the felony murder of Aretha Ellison while in the commission of an aggravated assault upon other individuals. In addition, the indictment charged the three with several counts of aggravated assault. The trial court granted a directed verdict of acquittal as to one of the aggravated assault counts, and the jury found Cammon, Bolton and Hall guilty on all of the remaining counts. Upon the merger of the aggravated assault counts into the felony murder count, the trial court entered judgments of conviction and life sentences for that offense. Cammon, Bolton and Hall filed motions for new trial. When the trial court denied their motions, each filed a separate appeal from his conviction and life sentence for the felony murder of Ms. Ellison.[1]

1. Cammon, Bolton and Hall enumerate the general grounds. The State's evidence shows the following: On the night of the homicide, all three were at a nightclub. Cammon became involved in a fistfight with Adrian Woods. This fight ended when Cammon fled. Bolton and Hall left the nightclub for the apartment complex where Hall lived. They soon were joined by Cammon. Cammon stated to Bolton and Hall that "he needed to straighten his business, and he needed something to do it with." Hall's response was to give Cammon an unloaded Beretta pistol. Bolton, who also was armed, then supplied Cammon with bullets for the Beretta pistol. Shortly thereafter, a van carrying Woods and several others pulled into the apartment complex. Cammon recognized Woods and, as the van drove closer, Cammon took cover and opened fire. The occupants of the van shot back. Both Bolton and Hall attempted to fire at the van, but apparently the weapon they were sharing jammed. During the shoot-out, Ms. Ellison was struck and killed by a bullet as she stood in her living room. There was evidence that the bullet which killed Ms. Ellison could have been fired from a Beretta pistol. The claim of self-defense was contradicted by the evidence that Cammon, who was seeking

---

[1] The homicide occurred on August 4, 1996. The grand jury returned the indictment on September 4, 1996 and, on November 22, 1996, the jury returned the guilty verdicts. Hall filed his motion for new trial on December 12, 1996, Cammon filed his motion on December 16, 1996, and Bolton filed his motion on December 19, 1996. The trial court denied the motions on November 25, 1997. Cammon and Bolton filed their notices of appeal on December 19, 1997 and Hall filed his notice of appeal on December 22, 1997. The cases were docketed in this Court on February 5, 1998 and the appeals were submitted for decision on March 30, 1998.

revenge for his earlier fight with Woods, prepared an ambush and fired first before any one in the van became aware of his presence or made a hostile move toward him.

This evidence is sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ms. Ellison died as the result of an aggravated assault committed when Cammon opened fire on the occupants of the van. The evidence is also sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Bolton and Hall were parties to the aggravated assault because they supplied Cammon with the weapon and bullets knowing that he intended to use those items to avenge himself against Woods and they also attempted to fire at the occupants of the van. Accordingly, the evidence authorized the convictions and life sentences for the felony murder of Ms. Ellison. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Smith v. State*, 267 Ga. 372, 375 (5) (477 SE2d 827) (1996); *Williams v. State*, 267 Ga. 308, 309 (1, 2) (477 SE2d 570) (1996).

2. Cammon, Bolton and Hall urge that their convictions must be reversed because of the State's knowing use of perjured testimony. "Conviction of a crime following a trial in which perjured testimony on a material point is knowingly used by the prosecution is an infringement on the accused's Fifth and Fourteenth Amendment rights to due process of law. [Cits.]" *Kitchens v. State*, 160 Ga. App. 492, 493 (1) (287 SE2d 316) (1981). Here, unlike in *Kitchens*, supra, no State's witness has made an undisputed post-conviction recantation of any pre-conviction testimony. Instead, the purported perjury consists entirely of the inconsistencies and discrepancies between and among the pre-trial statements of the State's witnesses and the testimony given by them at trial. None of these inconsistencies and discrepancies in the State's evidence was undisclosed to the defense at the time of trial, and all instances were available as a basis for attacking the credibility of the State's witnesses. There is no constitutional requirement that the witnesses upon whom the State relies to prove its case must give consistent evidence. The applicable constitutional guarantee is the Sixth Amendment right to a trial before an impartial jury for a determination of the credibility of the State's case and defendant's defense. Here, the convictions are not based upon the State's knowing use of perjured testimony, but upon that version of the events most unfavorable to Cammon, Bolton and Hall, which version the jury accepted after hearing all of the evidence and resolving the credibility of all of the witnesses. *Harrison v. State*, 257 Ga. 528, 530 (1) (361 SE2d 149) (1987).

3. Cammon and Bolton urge that the trial court erred in allowing an officer, who was not qualified as an expert in ballistics, to give an opinion as to the trajectory of the bullet which killed the victim. The

record shows that the testimony was based upon the officer's own extensive investigation of the homicide, wherein he established the facts from which he formed his opinion. Under these circumstances, the officer's opinion as to the path of the bullet was admissible over the objection to his lack of expertise in the field of ballistics. *McGhee v. State*, 253 Ga. 278, 280 (5) (319 SE2d 836) (1984); *Spikes v. State*, 183 Ga. 279 (1) (188 SE 454) (1936); *Tanner v. State*, 163 Ga. 121, 126 (7) (135 SE 917) (1926).

The ultimate issue in the case was not the trajectory of the bullet, but whether Cammon, Bolton and Hall were guilty of an aggravated assault or not guilty by reason of self-defense. See *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755) (1985). If the three co-defendants were parties to an aggravated assault initiated against the occupants of the van, then they all were guilty of felony murder regardless of who actually fired the shot which killed the victim. *Smith v. State*, supra at 375 (5). If, on the other hand, they were victims of an aggravated assault initiated by the occupants of the van, then they all were not guilty by reason of self-defense even if one of them had shot the victim. The officer was not asked whether he believed that the three started the shoot-out or were justified in defending themselves against an aggravated assault begun by the occupants of the van. Compare *Fordham v. State*, supra. The officer only was asked if he had an opinion as to the path of the bullet, and his response to that inquiry was not inadmissible on the ground that it expressed his opinion on the ultimate issue in the case. Compare *Fordham v. State*, supra.

4. Cammon asserts that his trial counsel was ineffective in several respects. To prevail on this claim, Cammon must show that his trial counsel's performance was deficient and that, but for the deficient performance, there is a reasonable likelihood that the jury would have returned a different verdict. *Lowe v. State*, 267 Ga. 410, 413 (5) (478 SE2d 762) (1996). There is a strong presumption that Cammon received effective legal representation. *Lowe v. State*, supra at 415 (5) (d). Moreover, at the hearing on the motion for new trial, Cammon's trial counsel testified in defense of his own effectiveness. Having tried the case and heard from Cammon's trial counsel, the trial court found that there was no denial of effective assistance of counsel, and that finding must be affirmed unless it is clearly erroneous. *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

(a) The failure to request certain charges is cited as an example of ineffectiveness. According to trial counsel, he elected not to request charges on voluntary manslaughter and mutual combat because such charges were predicated upon Cammon's willing participation in the shoot-out and would be inconsistent with the claim of self-defense. Thus, counsel made a tactical decision to present a consistent com-

plete defense to Cammon's criminal liability, rather than to acknowledge the possibility of guilt of a lesser offense than that charged.

In connection with Cammon's claim of self-defense, his attorney did not request a separate charge that threats and menaces can authorize the "reasonable belief" that force is necessary. It does not appear, however, that there was any evidence of threats and menaces directed toward Cammon prior to the arrival of the van which would justify a reasonable belief that the use of deadly force was necessary to protect himself against its occupants. The previous altercation with Woods was a mere fistfight and no guns were involved. Insofar as the actual shoot-out is concerned, Cammon apparently did not claim that he engaged in an anticipatory firing based upon mere threats and menaces by the occupants of the van, but asserted that they actually shot at him first and he returned fire. If there was no evidence to authorize a charge on threats and menaces, it could not be ineffective for counsel to fail to request such an unauthorized charge. See *Daniels v. State*, 264 Ga. 259, 261 (3) (443 SE2d 622) (1994). Moreover, even if there was some evidence of threats and menaces, the extensive charge that was given by the trial court on self-defense was otherwise full and fair, and included repeated references to the principle that self-defense required only a "reasonable belief" that the use of force was necessary. See *Doss v. State*, 262 Ga. 499, 500 (3) (422 SE2d 185) (1992); *Brooks v. State*, 227 Ga. 339, 342 (3) (180 SE2d 721) (1971). Compare *Williams v. State*, 209 Ga. App. 355 (433 SE2d 361) (1993). Under these circumstances, it is improbable that Cammon would have been acquitted, but for the absence of the unrequested additional charge that a "reasonable belief" in the need to defend oneself could be based upon threats and menaces.

(b) Cammon's attorney did not move to strike for cause a prospective juror who knew Ms. Ellison's son. However, merely knowing the victim is not a sufficient ground for such a challenge. *Pope v. State*, 170 Ga. App. 799 (1) (318 SE2d 223) (1984). Consequently, knowing the victim's relatives would not be sufficient. Since voir dire was not transcribed, we must assume that the prospective juror expressed his impartiality and was not, therefore, subject to a challenge for cause. *Hines v. State*, 208 Ga. App. 470 (1) (431 SE2d 137) (1993). Moreover, counsel indicated that, because the prospective juror had no close contact with Ms. Ellison's son for a number of years, he made the decision to save his strikes for use against less desirable prospective jurors. Accordingly, the failure to challenge the prospective juror clearly was a tactical decision by counsel.

(c) Counsel did not introduce evidence that, on the night of the homicide, someone shot at the house of Cammon's mother. Cammon urges that this was instance of ineffectiveness, because evidence of

the shooting would have bolstered his claim of self-defense by showing that he was a target for Woods. However, there was no proof that the shooters were the occupants of the van or that the alleged incident was related to Cammon's fight with Woods. For this reason, counsel indicated that he made the strategic decision not to raise the issue, since it might portray Cammon as someone who was accustomed to violent confrontations. Moreover, trial counsel noted his desire to avoid the issue because of concerns over calling Cammon's mother as a witness.

(d) Cammon's lawyer made a disparaging remark about the State's counsel and was rebuked by the trial court. Cammon contends that this diminished the effectiveness of his attorney in the eyes of the jury. The record shows, however, that trial counsel apologized and the trial court acknowledged that the remark was the apparent result of an overly zealous and emotional representation of Cammon. *Holcomb v. State*, 268 Ga. 100, 104 (3) (485 SE2d 192) (1997). Thus, although counsel was rebuked, it was for exceeding, not falling short of, the bounds of effective representation.

Based upon the foregoing, the trial court was authorized to find that the alleged instances of ineffectiveness were not the result of inadequate preparation or presentation by Cammon's attorney. *Roberts v. State*, 267 Ga. 669, 673 (5) (482 SE2d 245) (1997). Thus, the trial court was authorized to find that Cammon failed to meet the burden of rebutting the strong presumption that he received effective assistance of trial counsel. *Lowe v. State*, supra. As the trial court's finding in that regard is not clearly erroneous, it must be affirmed. *Kelly v. State*, supra.

5. Under the evidence, Cammon intentionally fired the gun at the occupants of the van, thereby committing either the felony of aggravated assault or an act of self-defense. Thus, it was not error to refuse to give Cammon's requested charge on reckless conduct. See *Waugh v. State*, 263 Ga. 692, 694 (5) (437 SE2d 297) (1993). Compare *Bowers v. State*, 177 Ga. App. 36, 38 (1) (338 SE2d 457) (1985).

6. Cammon enumerates as error the trial court's failure to give the unrequested charge on threats and menaces. As previously discussed in Division 4 (a), such a charge does not appear to be authorized under the evidence and, in any event, the extensive charge on self-defense, as given, was otherwise full and fair.

7. Cammon urges that the trial court used improper language in responding to his trial counsel's disparaging remark about the assistant district attorney. Under the circumstances, the trial court was authorized to rebuke counsel. OCGA § 17-8-75. Compare *Peeples v. State*, 103 Ga. 629, 631 (2) (29 SE 691) (1898). A rebuke necessarily connotes censure. The trial court employed language appropriate to the situation and, as previously noted in Division 4 (d), even amelio-

rated its rebuke by acknowledging that counsel's remark was the product of his ardent representation of Cammon. The trial court's rebuke of counsel evidences no abuse of its discretion. See *James v. State*, 215 Ga. 213, 215 (4) (109 SE2d 735) (1959).

8. In its preliminary instructions to the jury, the trial court made reference to certain evidence that "will be developed" regarding the manner in which the alleged crimes had occurred. Cammon contends that this was an expression of an opinion by the trial court in violation of the mandate of OCGA § 17-8-57. However, the comment clearly was a preliminary reference to what the jury could expect to hear once the evidence began, and was not an unauthorized expression of an opinion by the trial court as to what actually had been proven in the case. See *Mays v. State*, 237 Ga. 907, 908 (230 SE2d 282) (1976). Moreover, because there was no contemporaneous objection, the right to urge a violation of OCGA § 17-8-57 was waived. *Walker v. State*, 258 Ga. 443, 444 (3) (370 SE2d 149) (1988).

9. In overruling the objection that the investigating officer lacked expertise in the area of ballistics, the trial court stated that the officer's proposed testimony as to the trajectory of the bullet "was hardly science." A timely objection was raised to this comment. However, there was no violation of OCGA § 17-8-57, because the comment was explanatory of the trial court's ruling on the objection to the admission of the officer's testimony. *McGinnis v. State*, 258 Ga. 673, 675 (4) (372 SE2d 804) (1988).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 18, 1998.

*James T. Barfield III,* for appellant (case no. S98A0720).
*Fanning & Hudson, Steven E. Fanning,* for appellant (case no. S98A0721).
*Sanders, Haugen & Sears, Walter S. Haugen,* for appellant (case no. S98A0722).
*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.