S00A0108. PICKREN v. THE STATE.
(530 SE2d 464)

BENHAM, Chief Justice.

Appellant Tommy Lamar Pickren was found guilty of malice murder in connection with the death of Gilmer County Deputy Sheriff Brett Dickey. Appellant was also found guilty of aggravated battery on another peace officer, aggravated assault on five other peace officers, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. On the jury's recommendation, appellant was sentenced to life imprisonment without the possibility of parole for the murder. The trial court imposed several terms of years for the other offenses. Appellant now appeals the judgment of conviction.[1]

---

[1] The homicide and appellant's arrest occurred on February 13, 1996. The Gilmer County grand jury returned a true bill of indictment during its April 1996 term, and the district attorney announced his intent to seek the death penalty on April 15, 1996. This Court conducted an interim review of the proceedings in *Pickren v. State*, 269 Ga. 453 (500 SE2d 566) (1998). Appellant's trial commenced on September 8, 1998. The jury returned its guilty verdicts on September 24 and its sentence recommendation on September 26. Appellant's sentence was filed on September 28, and his motion for new trial was filed on October 14. The trial court denied the motion for new trial on August 2, 1999, and appellant filed a timely notice of appeal on August 30. The appeal was docketed in this Court on October 1, 1999, and submitted for decision on briefs.

Armed with a Forsyth County warrant for the arrest of appellant Tommy Lamar Pickren and aware that he was considered extremely dangerous, the Gilmer County sheriff and several of his deputies attempted to arrest appellant at a Gilmer County mobile home. Appellant barricaded himself in the mobile home and jumped out and ran away when tear gas canisters were thrown into the residence. He was chased by several deputies, one of whom caught up with him. While the deputy and appellant scuffled, appellant managed to fire the deputy's semi-automatic pistol which had been dislodged from its holster and fallen to the ground. One shot struck and killed a deputy sheriff near the scuffle, and another shot wounded a second deputy. Appellant was subsequently subdued and arrested.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder and possession of a firearm during the commission of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Additional evidence that appellant had previously been convicted of a felony was sufficient to authorize the factfinder to find appellant guilty of being a convicted felon in possession of a firearm. Appellant contends he was entitled to a directed verdict of acquittal on the counts charging him with felony murder with the underlying felony being aggravated assault or aggravated battery on a peace officer. Since the trial court entered a judgment of conviction and sentence only on the verdict finding appellant guilty of malice murder, any issues concerning the felony murder counts of the indictment are moot and will not be considered. *Adams v. State*, 271 Ga. 485 (5) (521 SE2d 575) (1999).

Appellant also contends that verdicts of acquittal should have been directed on the count charging him with aggravated battery on a peace officer and the six counts charging him with aggravated assault on a peace officer because, he contends, the State did not prove he had actual knowledge that the victims were peace officers. Because aggravated assault upon a peace officer is a crime separate and distinct from aggravated assault, knowledge that the victim is a peace officer is an essential element of the offense. *Bundren v. State*, 247 Ga. 180 (2) (274 SE2d 455) (1981). The same is true for aggravated battery upon a peace officer. *Chandler v. State*, 204 Ga. App. 816 (3) (421 SE2d 288) (1992). Evidence presented in the case at bar that two of the deputies approached the front door and identified themselves as from the sheriff's department; that appellant saw at least one uniformed deputy before retreating into the mobile home; that a plainclothed deputy was wearing a rain vest with "sheriff" written on it; that deputies again identified themselves as from the sheriff's department as appellant ran from the mobile home; and that appellant told a GBI agent after appellant's arrest that he had seen two deputies approach the mobile home, was sufficient to estab-

lish that appellant knew the persons chasing him as he ran from the mobile home were peace officers. See *Dawsey v. State*, 234 Ga. App. 540 (1) (507 SE2d 786) (1998); *Chandler v. State*, supra, 204 Ga. App. at 822 (evidence that victim/officer was in uniform sufficient to establish defendant should have known the victim was a peace officer). See also *Jenkins v. State*, 266 Ga. 214, 215 (465 SE2d 432) (1996).

2. In a related enumeration of error, appellant contends reversible error was committed in the trial court's instructions to the jury on aggravated assault on a peace officer and aggravated battery on a peace officer because the jury was not informed that knowledge that the victim was a peace officer was an essential element of both crimes. See *Bundren v. State*, supra, 247 Ga. at 181; *Chandler v. State*, supra, 204 Ga. App. at 821.[2] While counsel for appellant at trial voiced objections to other portions of the trial court's instructions, counsel neither raised the objection currently under scrutiny nor reserved the right to raise additional objections in post-conviction reviews. See *McCoy v. State*, 262 Ga. 699 (2) (425 SE2d 646) (1993). Accordingly, appellate review of the issue has been procedurally defaulted. *Williams v. State*, 239 Ga. App. 30 (6) (521 SE2d 27) (1999). See *Rivers v. State*, 250 Ga. 303 (7) (298 SE2d 1) (1982).

3. Appellant asserts his sentence of life imprisonment without parole must be vacated because the commission of the aggravated battery against the surviving deputy sheriff was one of the aggravating circumstances listed by the jury to support the imposition of the sentence, and that aggravating circumstance is adversely affected by the trial court's alleged failure to charge properly the law of aggravated battery upon a peace officer. Regardless of the merits of appellant's contention concerning the trial court's jury instruction, the existence of three other aggravating circumstances found by the jury to support its recommendation of a sentence of life without parole, all of which are supported by evidence and none of which is challenged by appellant, support the imposition of the sentence of life imprisonment without parole. See *Lipham v. State*, 257 Ga. 808 (7) (364 SE2d 840) (1988) (death sentence affirmed where three of four aggravating circumstances withstood appellate scrutiny).

4. The State used all ten of its peremptory challenges to strike

---

[2] The jury was told that "[a] person commits the offense of aggravated assault upon a peace officer when that person knowingly commits aggravated assault upon an officer while that officer is engaged in or on account of the performance of official duties." The six counts of the indictment alleging aggravated assault upon a peace officer stated that appellant had "ma[d]e an assault [with a deadly weapon] upon the person of [the victim], a peace officer engaged in the performance of his official duties. . . ." With regard to aggravated battery upon a peace officer, the jury was instructed on the law of aggravated battery, not aggravated battery on a peace officer, and the indictment alleged that appellant had "caused bodily harm to a police officer engaged in the performance of his official duties. . . ."

women from the petit jury. Citing *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), and *J.E.B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994), counsel for appellant took issue with the district attorney's action as to six of the strikes and the trial court required the district attorney to proffer his reasons for challenging the women. The trial court found the district attorney's reasons to be gender-neutral and that appellant had not carried his burden of persuasion. On appeal, appellant contends that the district attorney's reasons evidenced "inherently gender motivated male dominant stereotypical thinking," and that the trial court erred in finding them to be gender-neutral.[3]

> The Equal Protection Clause of the U.S. Constitution prohibits discrimination in jury selection on the basis of race or gender, or [on] the assumption that a venireperson will be biased in a particular case for no reason other than the person's race or gender. [Cit.] . . . [T]he proponent of the strike is required to set forth a race [or gender]-neutral case-related, clear and reasonably specific explanation for the exercise of the peremptory strike. [Cits.] An explanation is not racially [or gender] neutral if it is based on "a characteristic that is peculiar to any race" [or either gender] [cits.], or a stereotypical belief.

*Turner v. State*, 267 Ga. 149 (2) (476 SE2d 252) (1996). On appeal, the appellate court gives great deference to the trial court's findings as to whether the opponent of the strikes has carried the burden of persuading the trial court that the proponent of the strikes acted with discriminatory intent. Id. After reviewing the transcript, we

---

[3] The district attorney explained that one person was struck because she was overcome by her emotions during voir dire and he and the victim's family believed this was a sign she would not be able to withstand the rigors of what was to be a very emotional trial. Another venirewoman's teen-aged son had spent time in a youth detention center and the woman had laughed at inappropriate moments during the proceedings, leading the district attorney to believe she was not taking the matter seriously. From the voir dire responses of a third woman came information that she had a relative who had been recently charged and convicted of aggravated assault, and the district attorney believed she was "potentially sympathetic" to the defendant's situation. The district attorney had learned through independent investigation that the fourth venirewoman at issue had not responded truthfully to a question concerning the existence of relatives with criminal backgrounds and had expressed a viewpoint that led the district attorney to believe she would be sympathetic to someone with the defendant's background. The next venirewoman had given voir dire responses regarding incarceration alternatives to the death penalty, leading the district attorney to suspect her support of the death penalty. The last woman who was struck from the jury by the district attorney also expressed opinions about the imposition of the death penalty and expressed concern for those who needed help, leading the district attorney to question her support of the death penalty and to consider her as someone who might by sympathetic to the defendant.

conclude that the trial court did not err since none of the district attorney's explanations of his strikes was based on a characteristic peculiar to females and appellant did not show that the district attorney acted with discriminatory intent.

5. After his arrest, appellant was taken to a hospital for treatment of injuries and then to a probation office in Forsyth County where a GBI agent interviewed him after midnight. His motion to suppress the statement he then gave was denied by the trial court after a *Jackson-Denno* hearing, and he asserts on appeal that the trial court erred in doing so.

" 'Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.' [Cit.]" *Lawton v. State*, 263 Ga. 168, 171 (429 SE2d 921) (1993). The GBI agent testified that, while appellant indicated he had been drinking earlier on the day of the shooting, the agent did not smell alcohol on appellant when he gave his statement, and appellant appeared calm and alert and responded quickly to the background questions posed by the agent. The agent acknowledged that, between the shootings and appellant's statement, appellant had been treated at a hospital for lacerations to the hand and head, but testified that neither injury affected appellant's demeanor at the time of his statement. The agent described appellant as one who appeared to understand what was going on around him and one who gave information in a narrative form rather than by responding to a series of questions. As there is evidence to support the trial court's conclusion that appellant freely and voluntarily gave the incriminating statement used at trial, the decision to admit the statement at trial is upheld on appeal. Id.

6. A police officer from Jackson, Georgia, where appellant was incarcerated while awaiting trial, testified that he did not allow appellant to watch a movie with the other inmates which caused appellant to become angry and state, "[People] like you are the reason I shot that cop." Appellant unsuccessfully filed a motion in limine to exclude the officer's testimony on the ground its probative value was outweighed by its prejudicial effect. Since a defendant's admission that he committed the criminal act for which he is on trial is " 'probably the most probative and damaging evidence that can be admitted against him,' " (*Tatum v. State*, 249 Ga. 422 (1) (291 SE2d 701) (1982)), we cannot say the trial court erred in denying appellant's motion in limine.

7. Appellant contends the trial court erred when it admitted into evidence the bloodstained clothing of the fatally-wounded deputy sheriff, arguing that the prejudicial effect outweighed the probative value of the evidence. Inasmuch as appellant was charged with multiple counts of aggravated assault and aggravated battery on the

peace officers who were with the murder victim, who was himself a uniformed peace officer, the murder victim's uniform was evidence that appellant knew that the persons at whom he fired a weapon were peace officers. See Division 2, supra. Accordingly, it was not error to admit the evidence at issue.

8. Appellant complains that the trial court made an impermissible comment on the evidence during its jury charge in the guilt/innocence phase of the trial, in violation of OCGA § 17-8-57.[4] In order to preserve for appellate review the question of whether a statement violates OCGA § 17-8-57, an objection or a motion for mistrial must be made at trial. *Driggers v. State*, 244 Ga. 160 (2) (259 SE2d 133) (1979). If, as is the case here, the alleged improper comment was made during the jury charge, a general reservation of the right to object to the jury instructions in post-conviction review also preserves the alleged violation of § 17-8-57 for appellate review. *Sims v. State*, 266 Ga. 417 (2) (467 SE2d 574) (1996). Inasmuch as no action was taken at trial to preserve this question for appellate review (see Division 2, supra), we do not consider it further.

9. During his testimony, the chief deputy sheriff stated that the sheriff and deputy sheriffs "knew [appellant] was on parole." The trial court denied appellant's motion for mistrial and counsel for appellant turned down the trial court's offer of curative instructions. On appeal, appellant contends his character was impermissibly placed in evidence and the trial court erred in overruling his objection and denying his motion for mistrial. "Since defense counsel declined the trial court's offer to give curative instructions to the jury, appellant will not now be heard to complain." *Jones v. State*, 250 Ga. 166 (3) (296 SE2d 598) (1982). See also *Lewis v. State*, 198 Ga. App. 808 (2) (403 SE2d 233) (1991).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 30, 2000.

*J. Michael Treadaway*, for appellant.

*Roger G. Queen, District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellees.

---

[4] The trial court stated: "As you know, there was only one homicide or one murder or one killing, and the other things are various offenses that charge how that was done."