## A01A0565. SEIDENFADEN v. THE STATE.
(547 SE2d 578)

MIKELL, Judge.

William Franklin Seidenfaden was convicted of child molestation, aggravated sexual battery, and cruelty to children for sexually abusing his niece's nine-year-old daughter, S. R. The jury acquitted Seidenfaden of similar charges involving the victim's 11-year-old brother. Seidenfaden appeals his conviction, asserting that the trial court erred in denying his motion for new trial on the grounds of prosecutorial misconduct, judicial bias, insufficient evidence, and merger. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that S. R.'s mother, Seidenfaden's niece, regularly allowed her two young children to spend weekends with the defend-

---

[12] (Citation omitted.) *Paden v. Murray,* 240 Ga. App. 487, 488-489 (1) (523 SE2d 75) (1999).

[13] Id. at 489 (1).

ant during the period from February 1996 to June 1997. S. R.'s family first realized that Seidenfaden had been mistreating her in June 1997 when she adamantly refused to attend a scheduled visit with Seidenfaden. Because S. R. appeared frightened, her mother allowed her to visit her adult stepsister Staci Carosi instead.

That night S. R. told Carosi that Seidenfaden had been molesting her. Carosi testified that S. R. told her that Seidenfaden had watched S. R. take showers and that he pushed her down on the bed and "played with her." Carosi further testified that when she asked S. R. what she meant, she said Seidenfaden played with her "on her private area, and he had touched her boobies." According to Carosi, S. R. was extremely upset, and she told Carosi that she was afraid of the defendant.

Carosi immediately contacted S. R.'s mother and drove the child home. S. R.'s mother testified that her daughter said that the defendant had touched her and watched her shower "just about every time she went over there." The child told her mother that the abuse started around the time her grandmother died, in February 1996. When S. R.'s mother asked why she had not told anyone, S. R. said that Seidenfaden had threatened her and her parents. S. R.'s mother contacted the Smyrna Police Department the next morning.

Detective Michael Moore interviewed S. R. He testified that she told him that after watching her shower, Seidenfaden would often touch her private parts. Detective Moore further testified that when asked, S. R. confirmed that Seidenfaden "put his fingers inside of her." S. R. told Detective Moore that in addition to threatening her, Seidenfaden tried to bribe her with gifts like money and clothing.

Dr. David P. McGauley, S. R.'s physician, examined her on June 17, 1997. Dr. McGauley testified that during the course of the examination, S. R. told him that a relative "stuck his finger in her, inside her vaginal area. She said it was uncomfortable . . . and that this was happening, probably, she said on like one to two times a month."

At trial, S. R. testified that "[the defendant] touched me in my private parts, and tried to make me get close to him in a way like sex, basically, but I always resisted, and stuff." When the prosecutor asked what she meant by "private parts," S. R. responded that "[h]e would feel on them, and just in the lower one, he would feel on them. . . ." S. R. testified that Seidenfaden would reach under her clothing and underwear to touch her.

1. On appeal, Seidenfaden argues that his conviction should be reversed based on prosecutorial misconduct, asserting that the state made improper comments during its closing argument. This enumeration is without merit.

First, Seidenfaden argues that the following statement was improper: "Adult women victims of rape go through tremendous prob-

lems when dealing with something like that, and they are adults. They feel guilty that they didn't fight back." Defense counsel apparently objected to this statement by saying, "Judge, that's not allowed," and the court gave a curative instruction. No further objection was made.

Next, Seidenfaden contends that the prosecutor acted improperly when she stated, "[i]f you believe the children then he is guilty. It's really that simple." Defense counsel responded that it was a misstatement of the law, and the court told counsel that it would charge the jury on the definition of reasonable doubt. Finally, Seidenfaden contends that it was improper for the state to argue the following:

> [I]f you are prepared to bring back a verdict of not guilty, if you are prepared to say that the defendant did not do this, you must also be prepared to look those children in the eye and tell them that they are lying because that's what you are doing if you find him not guilty. You are, by your verdict, saying very clearly that you believe they are lying.

The defendant did not object to this portion of the argument.

Because Seidenfaden failed to adequately preserve these issues for appeal, we find that this enumeration of error presents nothing for review. "The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error." *Todd v. State*, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991). While Seidenfaden seemed to object to the prosecutor's statements regarding adult rape victims and the veracity of the children, he did not renew his objection or move for a mistrial following the court's rulings or curative instructions. Therefore, he failed to preserve the issue for appeal. *Miller v. State*, 240 Ga. App. 18, 19 (2) (522 SE2d 519) (1999); *Jones v. State*, 221 Ga. App. 374, 375 (2) (471 SE2d 318) (1996).

Seidenfaden never objected to the remaining portion of the state's argument that he now challenges on appeal. The Supreme Court has held that

> [w]hen no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial.

*Todd*, supra at 767-768 (2) (a). Even assuming that the portions of the state's argument challenged by Seidenfaden were objectionable, we find no harm sufficient to overcome the procedural default, partic-

ularly considering the overwhelming evidence of Seidenfaden's guilt. See id.

2. Next, Seidenfaden alleges that the trial court displayed judicial bias against him based on certain rulings it rendered and statements it made during closing arguments. We reject this argument.

The first instance Seidenfaden raises in support of his allegation of judicial bias is the court's response to a defense objection during the state's closing argument. As we discussed above, during her closing argument, the prosecutor referred to adult women who are victims of rape. Defense counsel told the court, "Judge, that's not allowed." The court responded as follows:

> Jurors, the purpose of closing argument is for counsel to argue to you what they believe the evidence in the case has shown. It is for you to determine whether the argument that is being made by counsel matches the evidence that you have heard in the case. Go ahead.

Additionally, Seidenfaden alleges that when the court ruled on two objections by the state during the defendant's closing argument, it essentially "instruct[ed] the jury to disregard the comments of defense counsel." Specifically, on one occasion, the state objected to defense counsel's argument as mischaracterizing the evidence. The court responded that "[i]t is for the jury to recall what the evidence was, and decide whether the arguments that counsel are making meet the evidence that has been presented to you in the case." Seidenfaden criticizes another ruling on an objection by the state, when the court stated:

> He can argue inferences from the evidence. It is for the jury to determine whether the inference is correct or not. Just as you can argue inferences from the evidence presented. It is for the jury to determine what inferences can properly be drawn from the evidence that you have heard.

As a preliminary matter, we find that Seidenfaden failed to preserve these issues for appellate review because he did not object to the court's rulings and curative instructions or move for a mistrial. See *Pickren v. State*, 272 Ga. 421, 426 (8) (530 SE2d 464) (2000). Seidenfaden contends that he preserved the arguments raised in this enumeration by generally reserving objection to the court's jury instruction; however, a general reservation of the right to object will preserve the issue for appeal only if the alleged improper comments were made during the jury charge. Id. In this case, Seidenfaden alleges that the court displayed bias during closing arguments.

According to OCGA § 17-8-57, it is error for a judge to "express or

intimate his opinion as to what has . . . been proved or as to the guilt of the accused." Until a recent Supreme Court decision, the question of whether OCGA § 17-8-57 has been violated would not be reached on appeal unless an objection or motion for mistrial was made. *Lucas v. State*, 197 Ga. App. 347 (1) (398 SE2d 417) (1990). However, in *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000), the Supreme Court held that when a judge expressed his or her opinion of a case in violation of OCGA § 17-8-57, the reviewing court should apply the plain error rule to determine whether the court committed an obvious error even if the defendant failed to object or move for a mistrial. Before *Paul*, the Supreme Court had applied the plain error rule only to death penalty cases; however, with that decision it extended the rule to all criminal cases. Therefore, despite counsel's failure to preserve this issue, we must consider whether the court violated OCGA § 17-8-57 and, if so, whether the violation constituted an obvious error or one that "seriously affected the fairness, integrity, and public reputation of these judicial proceedings." (Punctuation omitted.) *Paul*, supra, citing *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986).

Contrary to Seidenfaden's argument, the court's rulings challenged by the defendant were not improper expressions of its opinion of the case; rather, they provided accurate statements of the law. Unlike the judge in *Paul* who "intimated his opinion as to the credibility of witnesses and the guilt of the defendant," the court in the case sub judice simply ruled on the objections raised and instructed the jury on the applicable law without commenting on the evidence or the guilt of the defendant. Likewise, the trial court did not display judicial bias or provide any basis for questioning its impartiality. See *Kelly v. State*, 238 Ga. App. 691, 693 (1) (520 SE2d 32) (1999).

3. Seidenfaden challenges the sufficiency of the evidence presented of his intent to commit child molestation, which requires acting "with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

We find the evidence summarized above sufficient to authorize a rational trier of fact to find Seidenfaden guilty beyond a reasonable

doubt of child molestation. OCGA § 16-6-4 (a). Seidenfaden's claim that the state failed to prove intent is without merit.

> Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. OCGA § 16-2-6. (Cit.) A reviewing court will not disturb a factual determination by the jury on intent unless it is contrary to the evidence and clearly erroneous.

(Citations and punctuation omitted.) *Ney v. State*, 227 Ga. App. 496, 497-498 (1) (489 SE2d 509) (1997), citing *Branam v. State*, 204 Ga. App. 205-206 (1) (419 SE2d 86) (1992). See also *Baker v. State*, 241 Ga. App. 666, 669 (2) (527 SE2d 266) (1999).

There was evidence that Seidenfaden repeatedly fondled S. R.'s vaginal area and her breasts. The jury was authorized to infer that Seidenfaden committed these acts to satisfy his own sexual desires. See *Ney*, supra at 498.

4. Finally, Seidenfaden essentially argues that his convictions of child molestation and aggravated sexual battery merged and that the trial court erred in sentencing him as to each count. This argument is without merit.

Count 3 of the indictment charged Seidenfaden with the offense of child molestation, alleging that he committed an immoral and indecent act with the intent to arouse and satisfy his own sexual desires and those of S. R. "by touching, rubbing, and fondling the buttocks, breasts, chest, vagina, and vaginal area of the child. . . ." OCGA § 16-6-4 (a). Count 4 charged him with aggravated sexual battery, alleging that he penetrated the sexual organ of S. R. with a foreign object, his finger, without S. R.'s consent. OCGA § 16-6-22.2.

"Under OCGA § 16-1-6 (1), offenses merge as a matter of fact only if one of them is established by proof of the same or less than all of the facts used to prove the other." (Citation and punctuation omitted.) *Davis v. State*, 214 Ga. App. 360, 361 (4) (448 SE2d 26) (1994). The evidence summarized above demonstrates that Seidenfaden's convictions of child molestation and aggravated sexual battery were supported by separate facts. The child molestation conviction was supported by evidence that Seidenfaden fondled S. R.'s breasts and the exterior of her vagina on numerous occasions. The aggravated sexual battery conviction was based on evidence that Seidenfaden penetrated S. R.'s vagina with his finger. Therefore, the crimes did not merge, and the trial court was correct in sentencing Seidenfaden on each count. See id. at 361. See also *Veasey v. State*, 234 Ga. App. 795, 796 (2) (507 SE2d 799) (1998).

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 5, 2001 —
RECONSIDERATION DENIED APRIL 20, 2001.

*Nicholas Pagano*, for appellant.
*Patrick H. Head, District Attorney, Frances D. Hakes, Dana J. Norman, Assistant District Attorneys*, for appellee.