310 Ga. 254
FINAL COPY

S20A1399.  SHARPE v. THE STATE.

McMillian, Justice.

In July 2017, an Emanuel County jury found David Lee Sharpe guilty of felony murder and other related crimes in connection with the shooting death of Devonte Coney.[1] Sharpe now asserts that he received constitutionally ineffective assistance of counsel because his trial counsel failed to object to the testimony of a GBI special agent and failed to poll the jury. For the reasons that follow, we

---

[1] Coney was shot and killed on October 2, 2016. On December 14, 2016, an Emanuel County grand jury indicted Sharpe for malice murder (Count 1), three counts of possession of a firearm during the commission of a felony (Counts 2, 4, and 6), felony murder (Count 3), aggravated assault (Count 5), criminal damage to property in the first degree (Count 7), theft by receiving stolen property (Count 8), and possession of a firearm by a convicted felon (Count 9). The trial court granted the State's motion to dismiss Counts 2, 4, 5, 6, and 7. Sharpe was tried from July 10 to 13, 2017, and a jury acquitted Sharpe of malice murder but found him guilty on the remaining counts. The trial court sentenced Sharpe to imprisonment for life for felony murder, a concurrent term of ten years in prison for theft by receiving, and a consecutive term of five years in prison for possession of a firearm by a convicted felon. Sharpe filed his initial motion for new trial on July 21, 2017, which he amended in October 2019 through new counsel. Following hearings in October and December 2019, the trial court denied the motion for new trial as amended on April 9, 2020. Sharpe timely appealed, and the case was docketed to the August 2020 term of this Court and thereafter submitted for a decision on the briefs.

reverse Sharpe's conviction for theft by receiving stolen property but otherwise affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that during the early morning hours of October 2, 2016, Coney and two friends went to Flat's Lounge, a club in Swainsboro, where they sat at a table near the dance floor. Sharpe, who was also at the club during that time, got into a verbal confrontation with other patrons. Ashley Middleton, a friend of Sharpe's, intervened in an attempt to get Sharpe to calm down. After she walked away, she saw that Sharpe was again arguing with the same people, so she went back and told him to "just chill out." When the argument started a third time, Middleton led Sharpe outside. The people he was arguing with, however, followed them to the parking lot. When the confrontation turned into a fistfight, a club security guard attempted to disperse the crowd with pepper spray. However, the fight quickly escalated into a gunfight that lasted approximately 30 seconds. While Coney and his friends were still inside the club, multiple gunshots came into the building

2

from the direction of the parking lot. As they attempted to flee from the club, one of the gunshots fatally struck Coney in the head.

Shortly after the shooting, officers responded to a 911 call at a nearby Huddle House restaurant after a customer reported that a person involved in the shooting at Flat's Lounge was currently in the restaurant. That customer testified at trial that he felt compelled to contact police when he heard Sharpe, whom he knew from having previously lived in the same neighborhood, smiling and bragging about the shooting. When officers arrived at the restaurant, Sharpe rushed to the women's restroom, where he attempted to dispose of a Glock .40-caliber pistol and an extended 30-round magazine, both of which officers recovered from the restroom's trash can. Fifteen rounds remained in the magazine. At that time, Sharpe was arrested, and officers later determined that the firearm had been reported stolen in December 2015 after its owner found it missing from the cab of his truck parked in front of his Emanuel County residence. Swabs taken from Sharpe's right hand and from clothing he was wearing at the time he was arrested

3

tested positive for particles characteristic of gunshot residue.

In a recorded statement given to a GBI special agent after the Emanuel County Sheriff's Office asked the GBI to assist in the investigation, Middleton noted that Sharpe owned a black gun and identified Sharpe as one of the shooters. Relevant portions of her statement were played for the jury at trial. Officers recovered 51 shell casings, rounds, and projectiles of various calibers, including .40-caliber, from the club's parking lot.[2] The State called GBI Special Agent Joshua Alford, who utilized surveillance video from the club's four cameras, to testify in detail about the movements of an individual wearing clothing matching that worn by Sharpe at the time he was arrested (a white tank top that became torn at some point and camouflage overalls that were "capri" length). Specifically, Agent Alford pointed out the individual as he moved throughout the crowded building and into the parking lot, where he was involved in two physical altercations — one of which he appeared to instigate —

---

[2] Officers also located a projectile near Coney's body inside the club. A GBI firearms expert determined that projectile was not fired by the firearm recovered from Sharpe.

before he ran to a vehicle and then fired 14 to 15 shots in the direction of the club with what appeared to be a handgun based on the muzzle blasts.

After the jury found Sharpe guilty of felony murder and theft by receiving stolen property, the State introduced evidence of Sharpe's prior felony convictions for criminal attempt to commit armed robbery, possession of tools for the commission of a crime, and making a false statement, and the jury then found Sharpe guilty of possession of a firearm by a convicted felon.

1. Sharpe does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Sharpe guilty beyond a reasonable doubt of felony murder and possession of a firearm by a convicted felon. See *Jackson v. Virginia*, 443 U.S. 307,

319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[3]

However, we conclude that the evidence was legally insufficient to sustain Sharpe's conviction for theft by receiving stolen property. Although the State produced evidence that the gun had been stolen approximately ten months prior to the shooting and that Sharpe was in possession of it shortly after the shooting, the State offered no other evidence relevant to this count. Specifically, there is no evidence from which the jury could infer that Sharpe knew or should have known that the gun was stolen. See OCGA § 16-8-7 (a) ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. . . ."). Accordingly, we reverse Sharpe's conviction for theft by receiving stolen property. See *Daughtie v. State*, 297 Ga. 261, 262 (2)

---

[3] We remind litigants that this Court will end its practice of considering the sufficiency of the evidence sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). This Court began assigning cases to the December term on August 3, 2020.

(773 SE2d 263) (2015) (because evidence shed no light on defendant's knowledge of the handgun's provenance, evidence was insufficient to enable a rational jury to find him guilty beyond a reasonable doubt of theft by receiving stolen property).

2. Sharpe asserts that he was denied the effective assistance of counsel. We disagree.

To prevail on this claim, Sharpe must show that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U.S. 668, 695 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, Sharpe must show that his counsel performed in an "objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Lofton v. State*, 309 Ga. 349, 360 (6) (846 SE2d 57) (2020). And in evaluating the reasonableness of trial strategy, every effort should be made "to eliminate the distorting effects of hindsight." *Davis v. State*, 306 Ga. 140, 143-44 (3) (829 SE2d 321) (2019) (citation and

7

punctuation omitted). If Sharpe fails to show either prong of the *Strickland* test, we need not examine the other. See *DeLoach v. State*, 308 Ga. 283, 288 (2) (840 SE2d 396) (2020).

(a) Sharpe first argues that his trial counsel was constitutionally ineffective for failing to object to the testimony of Agent Alford because he should have been qualified as an expert witness before testifying about the content of the surveillance videos and because he should not have been permitted to testify about the identity of the person in the videos. We are unpersuaded.

The record shows that prior to trial, Agent Alford was asked to assist in the review of the surveillance videos. To familiarize himself with the case, he flew above the crime scene in a helicopter, walked the property in and around Flat's Lounge, reviewed photographs of the clothing Sharpe was wearing the night of the shooting, and studied the surveillance footage from four different cameras located in and around the club, focusing on an individual wearing the clothing Sharpe was wearing that night. At the motion for new trial hearing, trial counsel testified that she did not consider Agent

8

Alford's testimony to be "opinion testimony" because it was simply an explanation of the video recovered from the four surveillance cameras. Therefore, she did not object on the ground that he had not been tendered as an expert witness. She also explained that she did not object to Agent Alford's testimony because his testimony was consistent with her trial theory that another person seen on the video in the parking lot actually pulled a gun first and that Sharpe was therefore acting in self-defense. And his testimony allowed her to make the points she needed on cross-examination without having to put her own investigator on the stand and subjecting him to cross-examination. Trial counsel's decision not to object to Agent Alford's evidence and instead to use it to support Sharpe's claim of self-defense was a matter of trial strategy, and such tactical decisions about cross-examination do not constitute ineffective assistance unless they are so patently unreasonable that no competent attorney would have chosen that approach. See *Koonce v. State*, 305 Ga. 671, 673-74 (2) (b) (827 SE2d 633) (2019) (decision to refrain from objecting to testimony in favor of showing inconsistencies in

9

the evidence is a matter of trial strategy and will not support an ineffectiveness claim if reasonable); *State v. Goff*, 308 Ga. 330, 334 (1) (840 SE2d 359) (2020) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and "will not form the basis for an ineffective assistance of counsel claim unless [they were] so patently unreasonable that no competent attorney would have chosen [them]." (citation and punctuation omitted)). We cannot say that trial counsel's decision under these circumstances was patently unreasonable. "Given counsel's founded, reasonable belief that [Sharpe] was best served by using this evidence to his advantage instead of objecting to it, counsel's decision amounted to reasonable trial strategy that does not constitute deficient performance." *Griffin v. State*, 309 Ga. ___, ___ (3) (849 SE2d 191) (2020).

(b) Sharpe also asserts that his trial counsel was ineffective for failing to request a poll of the jury because a poll would have revealed that Juror No. 15 rendered her verdict under duress. Again, we disagree.

The record shows that during the sentencing hearing, conducted immediately after the trial court released the jury, defense counsel informed the court that one of the jurors told a member of her office that the verdict "was not [her] decision, and so one of the guys . . . cussed at her." The court announced that there was nothing it was able to do at that point. Sharpe raised the issue again in his motion for new trial, and at the second hearing on the motion, Juror No. 15 testified that during deliberations one of the jurors "cursed [her] out," and she became "real angry." The juror "cussed" at her again, so "[she] just refused and . . . gave up."[4]

---

[4] Juror No. 15 and several other jurors also testified about the interactions between the jurors during deliberations and how they may have affected their mental processes. However, we decline to consider this evidence under OCGA § 24-6-606 (b), which provides:

> [A] juror shall not testify by affidavit or otherwise, nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the jury to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith . . . .

See also *Beck v. State*, 305 Ga. 383, 386 (2) (825 SE2d 184) (2019) (explaining that OCGA § 24-6-606 (b) "embodies a 'nearly categorical bar on juror testimony,' with only three specific exceptions providing the subject matter on which a juror is allowed to testify" (citation omitted)). The juror testimony here does not fall within any of these narrow exceptions.

11

We have consistently rejected ineffective assistance of counsel claims based on the failure to poll the jury. See, e.g., *Johnson v. State*, 293 Ga. 641, 647 (11) (c) (748 SE2d 896) (2013); *Marshall v. State*, 285 Ga. 351, 353 (4) (c) (676 SE2d 201) (2009). The purpose of polling the jury "is to [e]nsure that each member of the jury assents to the verdict, and for the court to discern possible coercion." *Cartwright v. State*, 291 Ga. 498, 501 (2) (c) (731 SE2d 353) (2012) (citation and punctuation omitted). "Where a poll of the jury discloses other than a unanimous verdict, the proper procedure is for the trial court to return the jury to the jury room for further deliberations in an effort to arrive at a unanimous verdict." *Benefield v. State*, 278 Ga. 464, 465 (602 SE2d 631) (2004).

Here, Sharpe points to no authority requiring counsel to seek to poll the jury, and there is no evidence that counsel had reason to suspect, at the point the verdict was returned, that it was coerced. Under these circumstances, we cannot say that counsel performed deficiently. See *Chavez v. State*, 307 Ga. 804, 809 (2) (837 SE2d 766) (2020); *Johnson*, 293 Ga. at 647 (11) (c); *Marshall*, 285 Ga. at 353 (4)

(c). Accordingly, Sharpe has failed to carry his burden to prove that he was denied constitutionally effective assistance of counsel.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Warren, J., not participating.*

Decided October 19, 2020.

Murder. Emanuel Superior Court. Before Judge Palmer.
*T. Mack Taylor*, for appellant.
*S. Hayward Altman, District Attorney, John A. Fitzner III, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.