**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 15, 2025**

# In the Court of Appeals of Georgia

A25A1114. RUBIO v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted David Rubio of one count of driving under the influence of alcohol such that he was a less-safe driver (DUI less-safe) and two counts of failing to halt at a stop sign. Rubio now appeals his convictions and the denial of his motion for new trial, arguing the trial court erred in (1) admitting evidence of his prior convictions, (2) failing to grant a new trial in light of witness testimony that was later shown to be false, (3) admitting witness testimony opining on the ultimate issue, and (4) denying his claim that trial counsel rendered ineffective assistance. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 2:00 a.m. on September 19, 2020, a patrol officer with the Peachtree City Police Department observed a white minivan run a stop sign at an intersection. As a result, the officer followed the vehicle; and only a few moments later, the minivan ran a second stop sign. The officer then initiated a traffic stop; and after the driver pulled over, the officer exited his patrol vehicle and approached the minivan's passenger side to avoid exposing himself to traffic. After asking the driver for his license (which identified him as Rubio), the officer smelled an alcoholic-beverage odor coming from the vehicle, and he noticed Rubio's eyes appeared glassy. The officer also asked three times if Rubio saw the two stop signs he drove through, before Rubio finally responded that he had not seen them. The officer then called for the assistance of Corporal Noah Wootten, who had more experience in DUI and traffic-violation investigations.

Corporal Wootten arrived on the scene, and immediately approached Rubio, who was still in his vehicle. And like the initiating officer, he also smelled an alcoholic-beverage odor and observed that Rubio's eyes appeared bloodshot and watery. Wootten then asked Rubio to exit his vehicle; and Rubio complied but got caught up

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

in his seatbelt as he did so. Wootten also noticed that Rubio stumbled a bit as he walked and significantly slurred his words when he spoke. Next, Wootten asked Rubio to walk toward the back of his vehicle so he could conduct field-sobriety tests; but Rubio dropped to his knees, placed his hands in the air, and exclaimed that he did not want to be shot. After assuring Rubio he had no intention of harming him, Wootten attempted to conduct the horizontal gaze nystagmus ("HGN") test, but Rubio just stared straight ahead rather than following directions. Wootten also conducted the walk-and-turn test, which Rubio had difficulty completing; and when he asked Rubio to blow into a portable breath-testing device, he only managed to spit in it. At this point, Rubio was arrested for DUI less-safe.

The State charged Rubio, via accusation, with one count of DUI less-safe and two counts of failing to halt at a stop sign. The case ultimately went to trial, during which the State presented the foregoing evidence. And after the State rested, Rubio testified in his own defense and generally disputed the officers' version of events. More precisely, Rubio claimed to be extremely tired at the time of the traffic stop because he attended a comedy club that evening and was not used to staying out so late. He also claimed the alcoholic-beverage smell resulted from someone at the club

spilling a drink on him. Additionally, he maintained his slurred speech during the stop was because his jaw was broken in the past and that his difficulty in performing the walk-and-turn test was due to fatigue and because he suffers from neuropathy. Finally, Rubio testified that the encounter made him nervous given his own experiences and current news stories about police brutality.

Prior to cross-examining Rubio, the State requested a bench conference outside of earshot of the jury, in which it argued that part of Rubio's testimony "opened the door" to the admission of his prior criminal acts for impeachment purposes. Over objection by Rubio's counsel, the trial court agreed, and the State then questioned Rubio about his criminal record—including charges in Texas for possession with intent to deliver, family-violence assault, and aggravated assault. And at the end of the trial, the jury found Rubio guilty on all three charges in the accusation.

Rubio later obtained new counsel and filed a motion for new trial, arguing, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court held a hearing on the motion, during which Rubio's trial counsel briefly testified. And several months later, the court issued an order denying Rubio's motion for new trial. This appeal follows.

1. Rubio first contends the trial court erred in admitting evidence of his prior criminal charges. We disagree.

During Rubio's direct examination, he explained that he was nervous speaking with the officer at the time of the traffic stop and added: "I knew that [the officer] was going to just grind in on me and grinding and grinding and due to my background, all they gotta do is just run my last name Rubio and they can just charge me from my background." A moment later, as he continued his response to the same question, Rubio added: "I will not jeopardize ever, my kids drinking or doing any kind of drugs or anything like that." And based on this testimony, at the conclusion of Rubio's direct examination, the State successfully argued that Rubio "opened the door" to the admission of his prior criminal acts for impeachment purposes. The trial court agreed, and so, in its cross-examination, the State's prosecutor questioned Rubio about his criminal record—including charges in Texas for possession with intent to deliver, family-violence assault, and aggravated assault.

Rubio contends the trial court erred in ruling that he "opened the door"[2] to the admission of his criminal history; but the issue is more properly characterized as impeachment by disproving a fact. Significantly, OCGA § 24-6-607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."[3] And OCGA § 24-6-621, read in conjunction with Rule 607, adds that "[a] witness may be impeached by disproving the facts testified to by the witness."[4]

---

[2] As the Supreme Court of Georgia has noted, "opening the door" is not a "freestanding evidence rule allowing a party to present to the jury otherwise inadmissible evidence; the phrase appears nowhere in the [current Georgia] Evidence Code or in the Federal Rules of Evidence on which our new code was largely based." *Smith v. State*, 299 Ga. 424, 430 (2) (c) n.5 (788 SE2d 433) (2016) (punctuation omitted). Rather, "opening the door" is a metaphor often used for "a variety of situations that arise in criminal and civil trials involving conduct by one party that allows the other party to introduce evidence that otherwise would not be allowed." *Id.* (punctuation omitted); *see generally* 21 Kenneth W. Graham, Jr., FEDERAL PRACTICE & PROCEDURE EVIDENCE § 5039.1 (2d ed. Apr. 2016 update). Suffice it to say, litigants and trial courts should take care to identify the *precise* basis in our Evidence Code for asserting that one side has "opened the door" to allow the admission of otherwise inadmissible evidence. *See Smith*, 299 Ga. at 430 (2) (c) n. 5.

[3] *But see Johnson v. State*, 316 Ga. 672, 685 (5) (889 SE2d 914) (2023) (Pinson, J.) (noting that although OCGA § 24-6-607 permits the credibility of a witness to be attacked by any party, "a defendant does not have carte blanche to question a witness on issues of marginal relevance that are intended primarily to impugn the witness's character or motives").

[4] *See Taylor v. State*, 302 Ga. 176, 180 (3) n.5 (805 SE2d 851) (2017) (noting that OCGA § 24-6-621 may be read in conjunction with OCGA §§ 24-6-607 or 24-6-613

Of course, appellate courts "review the trial court's evidentiary ruling for an abuse of discretion."[5]

Here, by volunteering during his direct testimony that he would "not jeopardize" his kids by "drinking or doing any kind of drugs or anything like that[,]" Rubio allowed the State to impeach his testimony with evidence of his prior charges on possession with intent to deliver and family violence assault. And indeed, the trial court later included an instruction on impeachment when it charged the jury before its deliberations. Given these circumstances, the trial court did not abuse its discretion in allowing the State to introduce evidence of Rubio's prior convictions.[6]

---

(b), "as well as their federal counterparts"); *accord Corley v. State*, 308 Ga. 321, 325 (840 SE2d 391) (2020); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE, p. 409 (Ed. 2025) (noting OCGA § 24-6-621 has no counterpart in the Federal Rules of Evidence, but federal jurisprudence recognizes impeachment by contradiction and there is some consensus that OCGA § 24–6–621 may be read in conjunction with OCGA § 24-6-607).

[5] *Faust v. State*, 302 Ga. 211, 214 (2) (805 SE2d 826) (2017).

[6] *See Da Silva v. State*, 369 Ga. App. 75, 79-80 (2) (890 SE2d 876) (2023) (ruling that State was permitted to impeach defendant with evidence of his prior DUI conviction and his admitted cocaine use because defendant, by claiming he was "a law-abiding citizen" during his trial testimony, opened the door to being impeached with his prior offenses); *Parker v. State*, 339 Ga. App. 285, 289-90 (1) (793 SE2d 173) (2016) (holding that trial court did not abuse its discretion by allowing State to impeach defendant with evidence that he had previously been charged with aggravated

2. In his second enumeration of error, Rubio contends Corporal Wootten's testimony was improper in two respects.

First, he seemingly contends the trial court erred in failing to grant a new trial because some of Corporal Wootten's trial testimony allegedly constituted perjury. This contention is a nonstarter.

It is well established that "[c]onviction of a crime following a trial in which perjured testimony on a material point is knowingly used by the prosecution is an infringement on the accused's Fifth and Fourteenth Amendment rights to due process of law."[7] But perjury requires both "the intent to testify falsely and the act of false testimony, as opposed to swearing rashly or inconsiderately, according to belief."[8] And there is no constitutional requirement that "the witnesses upon whom the State

---

assault, after defendant testified on direct examination that he had never "been in no situation like this" (punctuation omitted)); *Harris v. State*, 333 Ga. App. 118, 121 (2) (775 SE2d 602) (2015) (concluding that trial court did not abuse its discretion in allowing defendant—who testified that he had never engaged in sexual relations with an underage girl—to be impeached to disprove that fact with evidence that he had in fact engaged in improper sexual contact with another minor girl).

[7] *White v. State*, 315 Ga. App. 54, 56 (1) (726 SE2d 548) (2012) (punctuation omitted); *accord Cammon v. State*, 269 Ga. 470, 471 (2) (500 SE2d 329) (1998).

[8] *Gates v. State*, 252 Ga. App. 20, 21 (1) (555 SE2d 494) (2001) (punctuation omitted).

relies to prove its case must give consistent evidence."[9] Instead, such inconsistencies "simply raise credibility issues for the jury."[10]

Here, during his direct testimony at trial, the State's prosecutor asked Corporal Wootten if every suspect subjected to field-sobriety tests ends up being arrested, to which he responded: "Absolutely not." The prosecutor then followed up by asking if Wootten let some people go. To this, Wootten replied: "Yes, ma'am. My last year on the traffic unit, we kept track of how many times I would do standardized field[-]sobriety [tests] and how many people I would actually arrest for driving impaired, and it was about 50-50." Rubio's counsel did not object to this testimony; and on cross-examination, he did not question the corporal about those statistics.

Later, during the hearing on Rubio's motion for new trial, his new counsel asked Corporal Wootten about a document produced by the Peachtree City Police Department that tracked arrest statistics and whether it represented the (50-50) data he testified about at trial. Wootten responded that it did not, as the document to which

---

[9] *Jones v. State*, 285 Ga. App. 352, 353 (1) (646 SE2d 323) (2007) (punctuation omitted); *accord Cammon*, 269 Ga. at 471 (2).

[10] *Jones*, 285 Ga. App. at 353 (1) (punctuation omitted); *accord Cammon*, 269 Ga. at 471 (2).

counsel was referring was data from the *entire* traffic unit and did not pertain exclusively to *his* traffic stops and arrests. Counsel then asked Wootten if he had the latter data, and he replied:

> No ma'am. We would send our stats for that week of how many times we did field sobriety or how many times we effected an arrest as well as the different priorities for the units such as hands-free device and sat belt violations. We would send that up to our Sergeant who would keep track of everything, so I do not have my personal records on that.

Counsel asked no more questions, the State's prosecutor asked no questions, and the Corporal Wootten was then excused.

Now, Rubio argues Corporal Wootten made up his testimony about field-sobriety tests versus arrest statistics at the motion-for-new-trial hearing. But characterizing this testimony as perjury strains credulity. Indeed, it is more reasonably construed as meaning Wooten did not have that particular document with him while testifying. And nothing in his testimony can be construed as an admission that the statistics he mentioned at trial were his own contrivance. But even if we agreed that Wootten's testimony could be characterized as fabricated, Rubio points to no evidence that the State knew the testimony was inaccurate (or incomplete). In fact, in

his appellate brief, Rubio acknowledges the State was unaware of the supposed fabrication until the motion-for-new-trial hearing. As a result, the trial court did not err in denying Rubio's motion for a new trial based on alleged perjury.[11]

3. Within his second enumeration of error, Rubio also contends the trial court erred in admitting Corporal Wootten's testimony opining on the ultimate issue at trial. Again, we disagree.

Near the conclusion of Corporal Wootten's direct testimony, the State's prosecutor asked him if—based on the entirety of the traffic stop—he was of the opinion that Rubio "was under the influence of alcohol and that it was less safe for him to drive[.]" Rubio's trial counsel objected, arguing Wootten should not be able to provide his opinion in that regard. But after a brief bench conference, the trial court overruled the objection and allowed the State's prosecutor to repeat the question.

---

[11] *See Brown v. State*, 291 Ga. 750, 753 (3) (733 SE2d 300) (2012) (holding "inconsistency in the testimony of the State's witnesses does not constitute a knowing use of perjury"); *Arnold v. State*, 301 Ga. App. 714, 715 (1) (688 SE2d 656) (2009) (holding defendant's conviction was not improperly a result of perjury as defendant could not show that victim's trial testimony was untrue or that the State knew it to be untrue); *Gates*, 252 Ga. App. at 21 (1) (explaining that because the evidence did not demand a finding that the officer intentionally testified falsely or that the prosecution knowingly solicited false testimony, trial court properly denied defendant's motion for new trial on that ground).

Wootten then responded that, in his opinion, Rubio was impaired and less safe to drive.

On appeal, Rubio essentially repeats the objection he lodged at trial and asserts the trial court erred in allowing Corporal Wootten to provide his opinion on the ultimate issue to be decided by the jury. But under the current Evidence Code, which has been in effect for over ten years and applies here,[12] the general rule is that "testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact."[13] Indeed, even before the enactment of our current Evidence Code, this Court held that "a police officer may give opinion testimony as to the state of sobriety of a

---

[12] Rubio was tried in December 2022. *See* Ga. L. 2011, p. 99, § 101 (explaining that new Evidence Code "shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date"). We take this opportunity, once again, "to remind our highly capable trial courts and lawyers of the importance of relying upon the [current] Evidence Code, as well as its accompanying case law, in addressing evidentiary issues arising after the [current] code's effective date." *Belcher v. State*, 344 Ga. App. 729, 737 (2) (b) n.29 (812 SE2d 51) (2018) (punctuation omitted).

[13] OCGA § 24-7-704 (a); *see Fisher v. State*, 309 Ga. 814, 821 (3) (848 SE2d 434) (2020) (explaining that "the current Evidence Code, specifically OCGA § 24-7-704 (a), abolished the prohibition on (lay) opinion testimony concerning the ultimate issue in a case" (punctuation omitted)).

DUI suspect and whether he was under the influence to the extent it made him less safe to drive."[14] Given these circumstances, the trial court did not err in admitting Wootten's opinion testimony as to whether Rubio was impaired to the extent he was less safe to drive.[15]

4. Rubio also maintains the trial court erred in denying his claim that trial counsel rendered ineffective assistance by failing to object to Corporal Wootten's improper testimony referenced in his second enumeration of error or, at the very least, adequately cross examine that testimony. But Rubio has not preserved this claim for review.

In his amended motion for new trial, Rubio argued his trial counsel performed deficiently by failing to hire an expert to assist with the trial or poll the jury after it

---

[14] *Scott v. State*, 332 Ga. App. 559, 564 (3) (774 SE2d 137) (2015) (punctuation omitted); *see, e.g.*, *Jaffray v. State*, 306 Ga. App. 469, 471(1) (702 SE2d 742) (2010) ("A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether he was under the influence to the extent it made him less safe to drive"); *Driver v. State*, 240 Ga. App. 513, 515 (3) (523 SE2d 919) (1999) (holding that a trial court may allow a trained and experienced officer to render an opinion based on the officer's personal observations as to whether defendant is DUI, less safe).

[15] *See Swanson v. State*, 366 Ga. App. 584, 587 (1) (884 SE2d 1) (2023) (holding that under current Evidence Code, officer's testimony regarding the use of accident investigations was not objectionable on the basis that it opined on an ultimate issue to be decided by the trier of fact, in prosecution for DUI, less safe).

rendered its verdict. But at the beginning of the hearing on Rubio's motion for new trial, his new counsel informed the trial court that Rubio was withdrawing the claim asserting ineffective assistance based on trial counsel's failure to hire an expert. And at the conclusion of her argument, Rubio's new counsel acknowledged that the failure to poll the jury does not result in a new trial.[16] But more crucially, at no point in Rubio's motion for new trial or in the hearing on that motion did he argue that his trial counsel performed deficiently by failing to object to Corporal Wootten's testimony.[17]

Importantly, ineffectiveness claims must be "raised and pursued at the earliest practicable moment, which for a claim of ineffective assistance of trial counsel is at the motion for new trial stage if the defendant is no longer represented by the attorney who represented him at trial."[18] But here, Rubio did not raise this particular claim of

---

[16] *See Sharpe v. State*, 310 Ga. 254, 258 (2) (b) (850 SE2d 54) (2020) (noting that the appellate courts of this state "have consistently rejected ineffective assistance of counsel claims based on the failure to poll the jury").

[17] As discussed in Division 2, *supra*, Rubio acknowledged in his appellate brief that neither he nor the State learned about Wootten's "fabricated" statistics until after trial. And as noted in Division 3, *supra*, Rubio's counsel did, in fact, unsuccessfully object to the corporal's testimony on the ultimate issue.

[18] *Allen v. State*, 317 Ga. 1, 12 (4) (e) (890 SE2d 700) (2023) (punctuation omitted); *accord Patterson v. State*, 314 Ga. 167, 171 (2) (a) (875 SE2d 771) (2022).

ineffectiveness in his amended motion for new trial or in the hearing on the motion, and the trial court did not address this claim in its order denying the motion for new trial. As a result, Rubio has waived appeal of this claim.[19]

For all these reasons, we affirm Rubio's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier J., and Senior Judge C. Andrew Fuller, concur.*

---

[19] *See Allen*, 317 Ga. at 12-13 (4) (e) (holding that defendant failed to preserve for appeal his claim that trial counsel was ineffective for failing to move for a directed verdict, when he did not raise claim in his initial motion for new trial or the amendments made thereto and did not raise claim in the hearing on the motion); *Patterson*, 314 Ga. at 172 (2) (a) (concluding that although defendant raised several ineffective-assistance claims, because he failed to raise the particular claim referenced in his appeal in his motion for new trial or at the motion-for-new-trial hearing, he forfeited appellate review of this claim).